CHARLES WIEGAND et al., Appellants, v. WILLIAM
F. WOERNER et al., Respondents.

St. Louis Court of Appeals. Submitted on Briefs January 10,
1911. Opinion Filed January 24, 1911.

1. TRUSTS: Responsibility of Trustee. Where a trust is created
by will and the trust fund is not turned over to the trustee
until several months after the death of testator, while the trus-
tee's title to the fund may revert back to the date of testator's
death, his responsibility for its investment and safe keeping
would attach only from the time he received it.

2. ————: Annuities: Rights of Annuitant. Where a will creates
a trust for the payment of an annuity, the annuitant takes no
vested interest in the annuity, as he may die before the pay-
ment falls due and so lose it, and the only rights he would
possess would be to enforce payment of the annuity when it fell
due and to require the trustees to perform their trust.

3. ————: Existence of Trust. Where a will created a trust
for the payment of an annuity but the trust fund was not turn-
ed over to the trustee until several months after testator's
death, during the period intervening between his death and
the date the fund was turned over to the trustee, the trust,
as an entity, was not in being, but existed only on paper.

4. ————: Annuities: Rights of Annuitant: Interest. Where a
will created a trust, the income of which was to be paid to tes-
tator's wife, who was made executrix, she was not entitled to in-
terest on the fund while she held it and before it came into
the hands of the trustee.

5. ANNUITIES: Apportionment: Exception to Rule. While, at
common law, the right of apportionment of an annuity did not
exist, and the rule has not been changed by statute, two ex-
ceptions have been engrafted thereupon by application of equit-
able principles, whereby annuities for maintenance of married
women living apart from their husbands, or infants, are appor-
tionable on the ground of necessity; and a third has some-
times been added, extending the exception to widows who were
without other means of support.

6. LAWS: Common Law in Force. The common law, where not
changed by statute, is in force in Missouri.

7. ANNUITIES: Apportionment: Wills: Rules of Construction.
The rule that a will must be construed so as to effectuate the
intent of the testator does not abrogate the common law rule
against apportionment of an annuity, but both rules can and do
prevail.

8. **WILLS: Rules of Construction: Technical Words.** While the testator's intent should be sought out and given effect, both at common law and under section 583, Revised Statutes 1909, yet, when technical words are used in a will, they must be interpreted in their established legal sense, unless a contrary meaning is plainly shown by the context.

9. **ANNUITIES: Definition.** While the word "annuity" is a technical word, it has a commonly accepted and popular meaning, and where it is employed in a will and nothing to the contrary appears, it should be construed as meaning a sum payable annually at the end of each year after it attaches, for life, or as otherwise limited.

10. **ANNUITIES: Suit for Apportionment: Evidence: Inventory of Testator's Estate: Exclusion: Harmless Error.** In a suit involving a right to apportion an annuity to the widow, the erroneous exclusion of the inventory of testator's estate, offered to show that the amount which the widow received as residuary legatee was so large that an apportionment of the annuity was not necessary for her support, was harmless, where the order of distribution, made on petition of the widow, afforded ample evidence that there was no necessity for anticipating the payment of the annuity to provide for her support.

11. **WILLS: Construction: Annuities.** A will gave trustees a fund to be held and invested, and the income to be paid to testator's widow annually during her life, to the extent of $5000, such sum to be made up from the principal, if the income was not sufficient, so that in any event she should, as long as she lived, receive an annuity of that amount, and that if the net income should exceed $5000 each year, the excess was to be added to the capital fund, and provided that upon the widow's death the capital fund should be paid to testator's children. *Held*, that it was the intent to create an annuity.

12. ——: ——: ——: **Time for Payment.** Where no time for the annual payment is fixed in a will creating an annuity, it is payable at the anniversary of testator's death.

13. **ANNUITIES: Construction: Apportionment.** Where the intent of testator was that an annuity should be paid annually, there could be no anticipation thereof, especially where it appeared there was no necessity for such anticipation to provide support for the widow; and where she died before the annual date of payment, her executor could not recover any part of such annuity.

14. **TRUSTS: Compensation of Trustee: Facts Stated.** Where the trustee of a fund of one hundred thousand dollars, to be held for the payment of an annuity, received it on July 8th, in the form of interest-paying bonds and a certificate of deposit

Wiegand v. Woerner.

in an absolutely safe bank and were not required to give bonds, and on August 5th, after the death of the annuitant, which occurred on July 24th, were asked to turn over the fund to the distributees, but refused to turn over the fund, or any part of it, for the reason a part of it was in dispute, $500 was a reasonable allowance for their compensation, and an allowance of $1500 was excessive.

15. ————: Allowance of Attorney's Fee. Where the trustees of a fund were made defendants in a suit involving part of the income of the trust fund and were necessary parties and, on appeal, the case was reversed and remanded for further proceedings as to credits and allowances, the amount actually in controversy being $2138.85, the trustees were entitled to a counsel fee of $250.

16. ————: Allowance for Expenses. Where the trustees of a fund incurred expenses in investigating the value of property offered as security for a loan of the trust funds, and in the procurement of bonds for investment of such funds paid the seller the accrued interest and a premium, such items were properly allowed as credits in favor of the trustees.

17. ————: Allowance for Taxes. Trustees of a fund are entitled to credit for taxes on the fund while in their hands, for which they are liable.

18. ————: Trustees: Competency. That one was attorney for testator, had written his will, and also represented testator's wife, who was the attorney's cousin, in a contest over the will, and in a settlement effected by the wife and the adverse parties, had acted as attorney for the wife, and had been appointed executor of her will, did not render it improper for him to act as trustee, under testator's will, of a trust fund, of which testator's wife was the beneficiary.

19. ————: ————: ————: Inconsistent Positions of Trustees. Where one was trustee, under a will, of a fund, the income of which was to be paid to testator's widow during her life, with remainder to testator's three children, two of whom were by a former marriage, and was also executor of the widow, who died before the annuity was payable, it was his duty, when a controversy arose, over apportionment of the annuity, between him, as executor of the widow's will, representing the residuary legatee under that will (the child by the second marriage), and testator's two children by his first marriage, to step aside and have the adverse claimants determine the question, or, upon their failing to do so, to bring the fund into court, requiring the parties to interplead; and it was improper for him to use his position as trustee to enforce his demand as executor as to the method of settling the dispute, but he should have surrendered either his office of executor or of trustee.

20. ———: ———: Removal: Grounds. To justify removing a trustee, there must be a clear necessity for such action to save the trust property, and such misconduct as to show want of capacity or fidelity, putting the trust in jeopardy; and a mere error, or even breach of trust, may not be sufficient.

21. ———: ———: ———: Grounds Held Insufficient. In an action involving the administration of a trust, where, on appeal, the court was asked to remove the trustee, it is *held* that there was no necessity for such action to save the trust fund and that there was no conduct on the part of the trustee tending to show either want of capacity or fidelity, putting the trust fund in jeopardy.

22. ———: Action Against Trustee: Costs: Taxing Cost Against Trustee. Where one of two trustees of a fund for the benefit of a *cestui que trust* during her life was also her executor, and insisted, solely in the interest of the estate, that the yearly income, the time for payment of which had not arrived at the beneficiary's death, should be apportioned before distribution of the fund was made, which insistence brought on a litigation tying up the entire fund, and his cotrustee agreed to his contention, his attitude being improper and in violation of his duty as trustee, the cost of the litigation should be taxed against him as executor.

23. ———: Compensation of Trustee. The rule that, where one of two or more trustees acts in harmony with his cotrustee in connection with an adverse claim of such cotrustee, neither of them is entitled to compensation, should not be enforced where the trustees acted in apparent good faith.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. L. Minnis, Perry Post Taylor* and *Emil Mayer* for appellants.

(1) The claim of executor Woerner is not only contrary to the terms of the will, which must prevail, but is contrary to all the authorities on the subject. Sec. 583, R. S. 1909; Irving v. Rankine, 13 Hun. 147 affirmed in 79 N. Y. 636; Kearney v. Cruickshank, 117 N. Y. 95; Mower v. Sanford, 63 L. R. A. 625; Tracy v. Strong, 2 Conn. 659; Hizer v. Hizer, 71 Ind. 526; Nading v.

Elliott, 137 Ind. at p. 276; Chase v.. Darby, 110 Mich. 314; Wiggin v. Swett, 47 Mass. (6 Metc.) 194. (2) Defendant Woerner was disqualified from acting as trustee, and during his term of office qualified as executor of Rosalia Wiegand and set up a claim against the trust fund, and the trust company, as co-trustee, allied itself with him, and therefore said trustees are not entitled to any compensation. Gartside v. Gartside, 113 Mo. 348; 27 Am. and Ency. Essay of Law (1 Ed.), bottom p. 194 to p. 204; 28 Am. and Ency. Essay of Law (2 Ed.), p. 979; In re Mayfield, 17 Mo. App. 684; Newton v. Rebenock, 90 Mo. App. 650. (3) The trustees, by their claim for an exorbitant amount as compensation for their services, whereby plaintiffs were put to greater expense than the value of the services of the trustees, forfeited their right to any compensation. Judge v. Jackson, 58 N. H. 458; Moore v. Zabriskie, 18 N. J. Equity 51. (4) The trustees are not entitled to counsel fees or costs. 28 Am. and Eng. Ency. of Law 1090-1091; Matter of Elizabeth McCarter 94th N. Y. 558; Show v. Conway, 7th Pa. St. p..415; Brinton's Est. 10 Pa. St. 408; Lake v. Jones (Ky. 1891), 15 S. W. Rep. 658; Warbass v. Armstrong, 10 N. J. Equity 263; Lathrop v. Smalley, 23 N. J. Equity 192; Chamberlain v. Esty, 55 Vt. 378; Newton v. Rebenach, 82 Mo. App. 650; R. S. 1909, sec. 2083.

*A. C. Stewart* and *Charles W. Bates* for respondents; trustees and executor.

(1) For a faithful administration, such as here, of a testamentary trust, the trustees should be allowed reasonable compensation to be paid out of the trust fund. (a) Allowances are largely in the discretion of the trial court, with which the appellate court will not ordinarily interfere. In re Switzer, 201 Mo. 66; State ex inf. v. Bank, 197 Mo. 605; Oellien v. Galt, 131 S. W. 158. But if the allowance is to be reviewed by this court, all things considered, it appears from the

evidence that the same was too small rather than the reverse. Perry v. Stigall, 125 Mo. App. 264; In re Blossom's Estate, 7 N. Y. Suppl. 360; Phillips v. Lockwood, 4 Demorest (N. Y. Sur.) 299; Matter of De Peyster, 4 Sand. Ch. (N. Y.) 511; Donaldson v. Allen, 213 Mo. 293; Woerner on Guardianship, Sec. 154, p. 518; 28 Am. and Eng. Ency. Law (2 Ed.), 1033-1035, 1043; In re Steele's Estate, 97 Mo. App. 9; Kemp v. Foster, 22 Mo. App. 264; 2 Beach on Trusts and Trustees, sec. 735, 736, 739. Woerner on Administration (2 Ed.), sec. 530, pp. *1170-1171. (b) The testimony proved the exact reverse of the alleged antagonism for which appellants ask that the individual trustee be removed. But even if the mendacious allegations were true instead of false, the situation would be very far from justifying the demands of appellants. Lowe v. Montgomery, 117 Mo. App. 273; Stevens v. Larwill, 110 Mo. App. 140; 28 Am. and Eng. Enc. Law (2 Ed.), 980-981; Perry on Trusts, secs. 926, 927; Pattison v. Coons, 56 Mo. 169; Woerner on Administration (2 Ed.), sec. 177, p. *391; Woerner on Guardianship, sec. 98, 328-329; West v. Bailey, 196 Mo. 517; Marshall v. Meyers, 96 Mo. App. 643; Trust Co. v. Tracy, 77 Mo. App. 96; Woerner on Guardianship, sec. 102, pp. 344-345; 28 Am. and Eng. Ency. Law (2 Ed.), 1050; Browning v. Richardson, 186 Mo. 384. (2) Under the circumstances in which the trustees and executor were placed, they had a right to apply to the chancellor for a construction of the will and for directions in what proportions to pay out the funds, which right appellants could not forestall by the springing of this suit. Perry on Trusts, sec. 928; ib., secs. 922, 476a; State ex rel. v. Netherton, 26 Mo. App. 414; Hayden v. Marmaduke, 19 Mo. 403; Mersman v. Mersman, 136 Mo. 244; Church v. Robberson, 71 Mo. 326; Clark v. Carter, 200 Mo. 515. And for legal services and counsel fees incurred in connection with such proceeding, the court below very properly allowed the trustees a reasonable sum (certainly modest

enough in this case). Lycan v. Miller, 56 Mo. App. 79; Beck v. Kinealy, 89 Mo. App. 418; Coffman v. Gates, 110 Mo. App. 475; Berry v. Stigall, 125 Mo. App. 264; Albert v. Sanford, 201 Mo. 117; In re Blossom's Estate, 7 N. Y. Suppl. 360; 28 Am. and Eng. Ency. Law (2 Ed.), p. 1090-1091; Perry on Trusts, sec. 928; Woerner on Administration (2 Ed.), sec. 155, p. *355. (3) The criticism that the widow as executrix volutarily made up and paid over the trust fund before she was in law required so to do is utterly without merit. Young v. Thrasher, 48 Mo. App. 327; Burns v. Burns, 137 Fed. (C. C. A.) 781; 11 Am. and Eng. Ency. Law (2 Ed.), p. 1167, par. b; McCracken v. McCaslin, 50 Mo. App. 85; Richardson v. Cole, 160 Mo. 372. (4) Appellants demanded that the trustees should violate their duty by distributing the fund in disregard of the apportionability of the annuity provision. In the absence of agreement between the beneficiaries the trustees could not do otherwise than require an adjudication. Woerner on Administration (2 Ed.), sec. 301, p. *638; Blight v. Blight, 51 Pa. St. 420; Lynch v. Houston, 138 Mo. App. 167; Gheen v. Osborn, 17 Serg. & R. 171; Fisher v. Fisher, 5 Pa. L. J. 178; Howell v. Hanford, 2 W. Blacks. 1016; Rutledge ex parte, Harper Ch. 65; Lackawanna Co.'s Case, 37 N. J. Eq. 29; Wilson's Appeal, 108 Pa. St. 344; Clapp v. Astor, 2 Edw. Ch. 379; Attorney Gen. v. Smythies, 16 Beav. 385; City v. Strobridge, 7 Ohio N. P. 532; Parker v. Seeley, 56 N. J. Eq. 110; Matter of Stanfield, 135 N. Y. 292; Woerner on Administration (2 Ed.), sec. 458, p. *1006; Estate of Catron, 82 Mo. App. 416; Cooke v. Meeker, 36 N. Y. 15. (5) The court properly excluded from the evidence the inventory of the assets, and all other such extrinsic evidence concerning the residuary estate, and the amount and character of the assets. Small v. Field, 102 Mo. 104; Roberts v. Crume, 173 Mo. 572; Woerner on Administration (2 Ed.), sec. 421, p. *891 et seq; also sec. 414, p. *870 et seq.

*E. E. Schnepp* for respondent, Anna Rubelmann.

(1) The lower court correctly held the annuity or yearly provision to the widow to be apportionable and directed the pro rata sum accrued at the time of her death to be paid to her estate. Woerner on Administration (2 Ed.), sec. 301, p. *638; Woerner on Administration (2 Ed.), sec. 458, p. *1006; Lynch v. Houston, 138 Mo. App. 167; Estate of Catron, 82 Mo. App. 416; City v. Strobridge, 7 Ohio N. P. 532; Blight v. Blight, 51 Pa. St. 420; Ex parte Rutledge, Harper Ch. 65; Fisher v. Fisher, 5 Pa. L. J. 178; Gheen v. Osborn, 17 Serg. & R. 171; Lackawanna Co.'s Case, 37 N. J. Eq. 29; Wilson's Appeal, 108 Pa. St. 344; Clapp v. Astor, 2 Edw. Ch. 379; Attorney-General v. Smythies, 16 Beav. 385; Parker v. Seeley, 56 N. J. Eq. 110; Matter of Stanfield, 135 N. Y. 292; Cooke v. Meeker, 36 N. Y. 15. (2) All costs and expenses of this appeal, if the cause is affirmed, should be taxed against appellants, and not against the trust fund.

STATEMENT.—This is a suit in equity instituted by appellants Charles and George Wiegand, Jr., as plaintiffs. The defendants are William F. Woerner, as trustee under the will of George Wiegand, deceased, and as executor of the estate of Rosalie Wiegand, deceased, the St. Louis Union Trust Company, as trustee under that will, and Anna Rubelmann, co-beneficiary with plaintiffs under the trust hereinafter to be referred to, and also residuary legatee under the will of her mother Rosalie Wiegand, deceased. The petition, so far as we deem it material to state it, sets out that plaintiffs are the children of George Wiegand, deceased, born of a former marriage of George Wiegand, and that defendant Anna Rubelmann is the child of George Wiegand born of his second marriage, which was with the aforenamed Rosalie Wiegand; that Rosalie Wiegand died testate on the 24th of July, 1908; that defendant Woerner, by the last will of Rosalie Wiegand was appointed executor

of her estate and duly qualified as such, her will having been duly probated; that the aforenamed George Wiegand, the father, died testate, a copy of the will being attached as an exhibit to the petition and read in evidence. We summarize it here. By the first clause provision for the payment of the debts, funeral expenses and expenses of administration is made. The second clause devised to his wife Rosalie, the family homestead and appurtenances in St. Louis, during her life, the remainder at her death to his daughter Anna Rubelmann. The third clause "devised" to his wife all of the stock in the Standard Stamping Company (the stock averred in the petition to be worth $355,800 par), owned by testator at his death, she to hold the legal title thereto during her life, collecting dividends thereon, retaining for herself one-fourth of the net income derived from such stock, paying the remaining three-fourths of the income or dividends to the three children, that is Charles and George Wiegand, Jr. and the daughter Anna, in equal proportion, directing that no part of this stock should be sold prior to the death of his wife without the written consent of his wife and each of his said three children, and that if all should consent his wife could sell the whole or any part thereof and hold the proceeds free from any trust and divide them equally, that is to say one-fourth to herself and one-fourth to each of the three children; on the death of his wife the stock then held by her as trustee to vest in and be divided equally among the three children, one-third to each.

The fourth clause is set out in full both in the petition and answer. It is as follows:

"Fourth. Out of my property not above disposed of I direct that a capital fund be raised amounting to one hundred thousand dollars, which I hereby give and bequeath unto William F. Woerner and the St. Louis Union Trust Company, as trustees, to hold in trust for the following uses and purposes, to-wit: to have, hold, invest, reinvest, manage and dispose of in such manner

as they in their discretion may deem most judicious for the purpose of this trust (with the recommendation that care be taken that investments be safe from loss, rather than large in income); and out of the net profits, interest and income of said fund, I direct them to pay annually to my wife, Rosalie, for and during her lifetime, the sum of five thousand dollars; and if the net profits, interest and income be insufficient to pay that sum, then I direct my said trustees to take from the capital of such fund enough to make up such sum of $5000, so that in any event she shall, so long as she shall live, receive an annuity of that amount independently of any other provisions made for her in this will; but if such net profits, interest and income exceed the amount of five thousand dollars each year herein directed to be paid her, such excess shall be added to and form part of the capital fund.

And upon the death of my said wife this said trust shall cease, and the capital fund in its then condition shall be paid to and vest in my three children in equal shares. I direct that neither of said trustees be required to give bond and that in the case of the death, refusal or inability of either of them to act as trustee, the other shall become sole trustee with like powers and authority herein given to both were both acting; and in case of death, inability or refusal of both, the circuit court of the city of St. Louis shall appoint a trustee, who shall have the like powers, such trustee to be preferably one recommend by my wife."

The fifth clause constituted his wife Rosalie residuary devisee, and the sixth clause constituted her executrix without bond.

It is further averred in the petition that at the time of the death of George Wiegand, his estate, aside from the homestead, consisted entirely of personal property of the value of about $600,000, including the $355,800 stock heretofore referred to, which it avers was, under the terms of the third clause of the will and prior to

the death of Rosalie Wiegand, distributed among plaintiffs, the defendant Anna Rubelmann and Mrs. Rosalie Wiegand; that the balance of the personal property belonging to the estate of George Wiegand, other than this stock, amounted to about $240,000, all of which, with the exception of fifteen or twenty thousand dollars cash in bank, consisted of stocks and bonds bearing interest and earning dividends on the par value thereof, at the rate of from 4 to 7 per cent per annum.

Before continuing the synopsis of the petition, it is as well to state that a wrong date is given in it as the date of turning over the trust fund to the trustees, the date given in the petition being the 18th of July, 1908, when it should be July 8, 1908, the mistake having occurred through a typographical error in a statement furnished plaintiffs by the trustees August 5, 1909. Instead of following the petition therefore in giving the date there set out as that on which the fund was turned over to the trustees, we will use the correct date, July 8, 1908.

Continuing the synopsis of the petition, it further avers that on or about the 8th of July, 1908, Rosalie Wiegand, acting under the advice of the defendant Woerner, who was her attorney, delivered to said Woerner and to the St. Louis Union Trust Company, as trustees, under the fourth clause of the will of George Wiegand, the sum of $100,000, consisting of cash to the amount of $59,600, and two certificates of deposit amounting to $40,000, and that on July 8th, Woerner and the St. Louis Union Trust Company, the latter hereafter referred to as the Trust Company, as trustee, invested about $10,000 of the trust fund in the purchase of certain street railroad bonds and that on the 5th of August, 1908 (the date of the aforementioned statement) there remained in the hands of the trustees as of the trust fund so created, in addition to the St. Louis Railroad Company bonds, the sum of $90,022.19, practically cash, something like $5000 of it in the hands of the trustees,

the balance in bank; that from the date of the death of George Wiegand until July 8, 1908, Rosalie Wiegand, as residuary legatee of George Wiegand, held, possessed and enjoyed the income and interest from all of the estate of George Wiegand, with the exception of the stock in the Standard Stamping Company heretofore referred to as having been distributed, and held, possessed and enjoyed the income from that portion of the estate so delivered as aforesaid by her to Woerner and the Trust Company on the 8th of July, 1908; that Woerner, as the executor of the estate of Rosalie Wiegand, now claims that he is entitled out of the trust fund as belonging to the estate of Rosalie Wiegand, the sum of $2138.85, and as such executor is claiming that sum from himself and the St. Louis Trust Company, as trustees; that plaintiffs, disputing this claim, assert that by the death of Rosalie Wiegand, on the 24th of July, 1908, the trust terminated and the beneficiaries thereof were entitled immediately thereafter to a distribution of the fund. It is averred that the trustees were not required to and did not give any bond; they did no other work in connection with the administration of the trust than to receive it and hold it during a period of six days (so it is averred, but sixteen days is the correct period), and to purchase for investment the ten bonds of the railroad company, and that they claim for compensation for the services so rendered the sum of $3000, which plaintiffs aver is grossly unreasonable. There are charges in the petition reflecting on the motives of Mr. Woerner, in connection with the transfer of the trust fund from Mrs. Wiegand to the trustees. It is, however, averred that Mr. Woerner, by acting as attorney for Mrs. Wiegand and as the executor of her estate under her will, is occupying an antagonistic position to his duties as trustee. The prayer of the petition is that William F. Woerner be decreed to be disqualified to act as trustee; that he be removed as such and that the Trust Company, as trustee, be or-

dered to distribute and pay to each of the plaintiffs one-third of the trust fund, with interest from the date of demand, to-wit, August 3, 1908, less such reasonable compensation justly and equitably chargeable to the shares of the fund belonging to the plaintiffs and less also such reasonable expenses as it may have incurred in the administration of the trust fund and for general relief.

The joint answer of the two trustees and of the executor Woerner, as summarized by counsel for defendants, "admits the relationship, the death and testacy of George and Rosalie Wiegand; admits the executorships and the absence of debts of estate of George Wiegand deceased; sets forth the trust clause (before specifically set out); admits distribution of certain stock of George Wiegand's estate amongst the parties; specifically denies in detail the charges against Woerner; avers the making up of the trust fund on July 8, 1908, pursuant to order of the probate court; sets forth the services rendered and the course of the administration of the trust; investment of the funds; sets forth the receipts and expenditures; denies any antagonistic relation of Woerner; prays the court for affirmative relief to construe the trust clause in the will to determine whether the legacy of $5000 is apportionable; denies any ground to remove Woerner as trustee; alleges that the trustees made all attempts to have an adjustment with plaintiffs as to a reasonable compensation but that plaintiffs refuse to allow anything; asks the court to make a reasonable allowance jointly to trustees, as well as for counsel fees; requests the court to determine the respective amounts to which the parties are entitled and to decree payment in conformity therewith, etc."

Anna Rubelmann, in a separate answer, sets up her claim as residuary legatee of her mother, Rosalie Wiegand, and avers that the annuity provision of $5000 to the widow, Rosalie Wiegand, is apportionable and demands that the pro rata thereof earned before the wid-

ow's death be paid to Woerner as the executor of the widow. As a further answer she adopts as for her own the answer of the trustees and of Woerner as executor of Mrs. Wiegand's will. Plaintiffs filed a general denial by way of reply to both answers. There was little conflict in the evidence. We follow it as far and fully as we consider material to bring out the points upon which our decision is placed.

George Wiegand, an elderly gentleman of means, died in St. Louis, on February 20, 1908, leaving surviving him his wife, Rosalie Wiegand, two sons, Charles Wiegand and George Wiegand, Jr., by a former marriage, and one daughter, Anna Rubelmann, wife of George Rubelmann, by his second wife Rosalie. He left the will heretofore referred to, dated April 13, 1906, and upon his death his widow took out letters testamentary and was proceeding with the administration when the two sons, plaintiffs here, commenced a contest against that will. The matters between the parties having been settled on compromise, the will was by agreement established in due form about the 22d or 23d of June, 1908. Under the agreement of settlement the Standard Stamping Company stock owned by the estate and amounting in value to $355,800 was, on the 24th of June, 1908, by consent of all parties, distributed between the parties by the executrix, as averred in the petition. On July 6, 1908, Rosalie Wiegand, as executrix, presented her petition in the probate court in which, setting up the fourth clause of the will, she averred that among the assets of the estate were two certain certificates of deposit, one due six months thereafter for $20,400, and the other due on thirty days' notice, dated January 22, 1908, for $20,000, and praying for an order authorizing her to transfer the said two certificates, together with sufficient other funds of the estate to trustees named in the fourth clause of the will, to make up the sum of $100,-000, the trust fund, and the court on that day ordered that she be authorized to turn over and transfer to the

trustees, naming them, the two certificates of deposit, "together with sufficient other funds in her hands, as such executrix, belonging to said estate, to make up said $100,000 trust fund as prayed for in said petition." On the 8th of July, 1908, the executrix delivered this $100,-000, made up as above, to the trustees, the item outside of the two certificates above referred to being a check for cash in the sum of $59,600. It appears that the two certificates were subsequently cashed when due and deposited to the order of the trustees as of date when ;cashed; according to the statement embodied in the decree of the circuit court in this case, that was done July 30, 1908, both having been received by the trustees July 8th. Rosalie Wiegand, the widow, died on July 24, 1908, testate, making her daughter residuary legatee and appointing William F. Woerner as executor, the latter qualifying as provided by law.

It should be noted that at the trial plaintiffs offered in evidence the inventory of the estate of George Wiegand, deceased. On counsel for defendants asking what the object of the introduction of the inventory was, counsel for plaintiffs stated that it was for the purpose of showing the estate that Mrs. Wiegand acquired as residuary legatee; that they considered it relevant to the issue as submitted in this case, it having been alleged that Mrs. Rosalie Wiegand had acquired all of the estate and of what it consisted, and that as residuary legatee she was supplied with a large estate; that the will makes her residuary legatee and the inventory shows the amount of the estate and of what it consisted. Counsel for defendants stated that he supposed that what counsel for plaintiffs had in mind was that they could show the amount of assets that came into Mrs. Wiegand's possession and that the annuity is not apportionable because she did not need the money; that that is the only theory on which they can be offering it, that it cannot be admitted under any other

theory, and if that is the theory of plaintiffs, defendants, by counsel, object to it as wholly irrelevant and immaterial. The court sustained the objection, plaintiffs duly excepting. The inventory is not in the transscript or abstract, but it does appear by the orders of the probate court in evidence, the orders made on July 6, 1908, when the petition of Mrs. Rosalie Wiegand for authority to turn over the $100,000 trust fund was presented and the order above referred to made thereon, that she also presented to the probate court a petition, verified by affidavit, for an order of distribution of the residue of the estate, as executrix, and that in her petition Mrs. Wiegand had set out, among other things that she was the residuary legatee under the will of her husband; that she had heretofore passed as such executrix in her own right and personal capacity as such residuary legatee, certain stocks in the said petition described, belonging to said estate, and which then stood upon the books of the respective companies in the name of George Wiegand, deceased, and she prayed for an order authorizing her, as such executrix, to transfer said stock to herself as such residuary legatee. The court on hearing and considering the petition and the evidence, ordered that she, as executrix, be and is authorized and empowered to transfer to herself in her own right as the residuary legatee under the will of her deceased husband, the stock described, namely, 250 shares of the Missouri Pacific Railway Company; 200 shares United Railways Company five per cent preferred stock; 100 shares of the American Car & Foundry Company seven per cent preferred stock; 300 shares United States Steel Corporation seven per cent preferred stock; 200 shares of stock of the National Bank of Commerce of St. Louis; 100 shares stock of the St. Louis Union Trust Company and 100 shares of stock of the American Pneumatic Service Company, all of the above, a total of 1220 shares, being entered as of the par value of $100 per share. There was no evidence intro-

duced as to the market value of any of this stock. Beyond this the evidence related to the value of the trustees' services and to the connection of Mr. Woerner with the matter. We will notice that hereafter.

At the conclusion of the hearing, the court, by its decree of date June 8, 1909, found, among other things, that the defendant trustees are entitled to retain out of the fund money for the payment of taxes upon the trust estate, and the sum of $1500 allowed as a reasonable compensation for their services as such trustees; to $250 for counsel fee in the circuit court in this case; to a credit of $135.56 accrued interest and premium on bonds purchased, and for $10 paid one C. F. A. Mueller for examination and appraisement of certain real estate submitted for a loan. It further found that the allegations in the petition reflecting on the defendant Woerner, to the effect that he had advised and procured payment by Rosalie Wiegand as executrix, to himself and the St. Louis Union Trust Company, as trustees, of the trust fund for the purpose of enabling the trustees to at once begin the administration of the trust fund and set up a claim for fees for the administration of the same at the expense of plaintiffs, as charged in the petition, "are not sustained by the evidence and that said allegations are untrue." We will pause here in our statement to say that we entirely concur with this finding as to Mr. Woerner. No testimony sustains the charge. The court further found as a matter of law that the annuity to be paid Rosalie Wiegand under clause 4 of the will, is apportionable and that Mr. Woerner, as executor of the will of Rosalie Wiegand, is entitled to receive the apportionate part of that annuity accruing between the death of George Wiegand and the death of Rosalie Wiegand, amounting to $2138.85. The decree then providing for payment or retention of these and payment of costs, and distribution of the remainder of the trust fund among the three beneficiaries equally, ordered that upon the trustees making the distribution

aforesaid and filing the proper statement, with vouchers showing the distribution of balance in their hands as above, should stand discharged.

Filing motion for new trial in due time and excepting to its being overruled, plaintiffs below have duly perfected appeal to this court.

REYNOLDS, P. J. (after stating the facts).— *First*: Although counsel for the respective parties, with the exception of the learned counsel representing Mrs. Anna Rubelmann, have devoted most of their very elaborate briefs and arguments to the consideration of the question of allowance to the trustees of commission, and as to whether Mr. Woerner, by reason of occupying the position of executor of the will of Mrs. Rosalie Wiegand, in claiming this fund from himself and his co-trustee, has forfeited his right as trustee and should be removed as such, the material and underlying question in the case arises over the proper construction of the fourth clause or item of the will of George Wiegand.

Two questions arise on this: First. How much are the trustees appointed under that clause entitled to deduct from the capital to pay the amount claimed to fall due between the death of George Wiegand and the death of his wife Rosalie, assuming that the annuity created by the trust is apportionable? Second. Is the annuity apportionable at all?

Taking up the first proposition, it is clear from the evidence in the case that down to the 8th day of July, 1908, the fund was in the hands, not of the trustees but of Mrs. Rosalie Wiegand herself, as executrix of her husband's will. The only period that the fund had been in the hands of the trustees during the lifetime of Mrs. Wiegand was between the 8th and the 24th of July, a period of sixteen days. It is a very singular line of argument that holds the trustees, as such, liable to the estate of Mrs. Wiegand for interest on the trust fund

when in her hands and before it came into their posses-
sion. Their title to it may revert back to the date of
the death of the testator who created the fund; their
responsibility for its investment and safe keeping could
only attach from the time they received it. As the annui-
tant may die before the payment falls due and so lose
it, she takes no vested interest in it; all she takes is
the right to enforce payment of the annuity when it
falls due, with the right to hold the trustees to their
trust. [Kearney v. Cruikshank, 117 N. Y. 95.] If Mrs.
Wiegand, as executrix, had not chosen to turn over the
fund until a year after the issue of her letters testa-
mentary it may have been within her right under the
law so to have chosen. But she could then have been
compelled to turn over certainly the capital fund. We
do not consider or pass upon this. On the theory of the
trustees and of the executor of Mrs. Wiegand, if she had
held out the fund from the trustees for the year, imme-
diately at the end of the year turning it over to them,
they would have been forced to have turned back to her
$5000, with the result that they would only in fact have
received as of the trust fund $95,000, instead of the
whole $100,000. In this case as it actually is, during
the period intervening between the death of her husband
and this 8th day of July, 1908, the trust as an entity
was not in being; it existed only on paper. The fund
itself, part of George Wiegand's estate which was to be
separated from his general estate and turned into, con-
verted into a trust fund, was in Mrs. Wiegand's own
hands, possession and control as part of the estate in
her hands as executor. If she did not make it yield in-
terest, it was surely not for the trustees to allow her
to deduct $5000 from it, nor is it equitable that her
neglect should make the other beneficiaries of the trust
fund suffer by a diminution of the capital, of the trust
fund itself. If, when Mrs. Wiegand turned over the
capital fund to the trustees, she had also turned over
any interest accruing on it during the period the fund

was in her hands, the case might present another aspect. She did not do this and there is no such element presented for decision. We express no opinion whatever on this view of it. On this branch of the case, therefore, and under the facts peculiar to this case, we hold that the executor of Mrs. Wiegand, as such, had no right whatever to assert, as against the trust fund in the hands of the trustees, a claim for interest or an accounting for interest on the fund while she held it and before that fund came into the hands and under the control of the trustees, as such. Following this a little further, if it could be supposed that these trustees, failing to account for the interest at the end of a year from the time of the death of George Wiegand, had been sued by Mrs. Rosalie Wiegand for the $5000, is it possible that they would not have been allowed to set up in answer to this claim for the $5000, that the trust fund had never been in their hands during the year but during all that period had been in the possession of Mrs. Wiegand herself? Is it possible that any court of law or of equity would have mulcted them for the interest, or held them guilty of violation of their trust by not having the fund earn interest while it was not in their hands? Least of all should Mrs. Wiegand's executor be permitted to take that interest out of the principal fund, a fund which, under the will, was to stand for the benefit of all the parties ultimately interested in the fund. The foregoing remarks are expressly limited to the facts in this case.

The second proposition covering the law as to the right of apportionment of an annuity, while, so far as we know, touched on by but one decision of the appellate courts of this state—that of Lynch v. Houston, infra—is a proposition settled by authority and a long line of decisions by courts of other jurisdictions. That at common law the right of apportionment did not exist, admits of no argument; that the common law, unless changed by statute, is in force in our state, is

beyond doubt; that we have no statute changing the common law on this, is equally beyond question. It is, however, universally conceded, that while at common law the right of apportionment of an annuity did not exist, two exceptions have been, by the application to them of principles of equity, engrafted upon that law. Judge Woerner, in his work on The American Law of Administration (2 Ed.), vol. 1, sec. 301, *p. 638, after announcing the rule of the common law that there is no apportionment of rent between successive owners, announces that the same rule with reference to apportionment applies to annuities. "They are not," says that learned author, "in their nature apportionable either in law or equity, except annuities for the maintenance, of the widow, or married women living apart from their husbands, or infants, in which case they are apportionable on the ground of necessity." But the cases which bring the widow within the exception and which support Judge Woerner in extending the exception are cases in which the widow was without other means. That is undoubtedly what the learned author had in mind when referring to the widow; that is, the case of a widow not provided for by dower or otherwise. Judge ELLISON, in Lynch v. Houston, to be hereafter referred to, notes the same exception.

In Manning v. Randolph, 4 N. J. L. 144, it is said that no principle is better settled than that if a bond be for the payment of an annuity at a date certain and the annuitant died before the day, the annuity of that year is lost, and that in the case before the court, as in the case at bar before us, the deceased could not herself have recovered the annuity before its anniversary, if she had been living; that the day of payment had not then come, "and surely," says the court (l. c. 145), "her administrators can have no greater right than she herself would have had."

In Tracy v. Strong, 2 Conn. 659, l. c. 664, referring to the exception to the common law rule, it is said that

it "was introduced by courts of equity, and obtains only, where an annuity is payable, by way of maintenance, to an infant or *feme covert*—who, by reason of their legal disabilities, might be unable to procure credit for necessaries, if payment for them depended upon their living till the annuity should, by the common rule, become payable." In this same case it is stated that the principle which underlies this rule of the common law is the same underlying that by which the common law holds that the payment of a debt must be on the day it falls due, so that neither a tender nor a demand of payment before that date is available.

In Irving v. Rankine, 13 Hun (20 N. Y. Sup. Ct.) 147, the rule is stated in the same way; that at common law there can be no apportionment of annuities, citing among other authorities in support of this, Williams on Executors, 109; 3 Redfield on Wills, 184, sec. 13; 1 Story's Eq. Jur., sec. 410. Repeating the rule and noting that there are but two exceptions to it recognized by the English authorities, one being the case of an annuity for the support and maintenance of infants, the other for the support of a wife living separate and apart from her husband, the court says (l. c. 149) : "These exceptions have been allowed from the necessities of the case, as otherwise the infants in the one case, or the wife living upon a separate maintenance in the other, could not procure credit for necessaries from the time when one installment became due to the next, unless the creditor should choose to take the risk of the annuitant surviving until the next installment became due. These, however, are noticed as remarkable exceptions to the general rule; and it has been held that they were not applicable to the case of a married woman living with and supported by her husband; and we do not find that they have ever been extended beyond the two cases referred to." In this case of Irving v. Rankine, it was claimed by the executor of the widow, the latter having died and her executor suing as in the case at bar, "that

a provision in lieu of dower falls within the same principle; but, in this case at least," says the court, "there cannot be the same ground of necessity, for, besides a large and valuable property given to her in fee (the widow), had other valuable property, viz., the two farms which she took by survivorship." The decision in Irving v. Rankine was affirmed by the Court of Appeals of New York (79 N. Y. 636), no opinion being filed. It is to be noted with reference to this case also that the court called attention to the fact that by chapter 75, Laws 1875, the state of New York had abrogated this rule, but that as the case in decision arose in 1858, when the testator died, the law of 1875 did not apply.

In Kearney v. Cruikshank, supra, a case arising before the adoption of the law of 1875 by the State of New York, after announcing the common law rule that an annuity payable yearly or for the year was not apportionable, the New York Court of Appeals, speaking through Judge ANDREWS, said (l. c. 97) : "We are not at liberty to decide the question in this case upon our notions of natural equity and justice, provided the settled rule of law fixes the rights of the respective parties, and determines the question presented." Stating the rule at common law, that annuities were not apportionable, subject only to the two exceptions of where the annuity was given by a parent to an infant child or by a husband to his wife living separate and apart from him, the Court of Appeals says (1 c. 98.) : "But with these exceptions, it was the uniform and unbending rule of the common law, recognized both by courts of law and equity, that annuities, whether created *inter vivos* or by will, were not apportionable in respect of time. This rule, it has been said, 'proceeds upon the interpretation of the contract by which the grantor binds himself to pay a certain sum at fixed days during the life of the annuitant, and when the latter dies, such day not having arrived, the former is discharged from his obligation.' (Lumley on Annuities, 291.) It re-

sulted from the general rule that, if the annuitant died before, or even on the day of payment, his representatives could claim no portion of the annuity for the current year." Many authorities are cited by the court in support of this proposition, both from the courts and the textwriters, and continuing the discussion of the subject, Judge ANDREWS, who delivered the opinion of the court gives (l. c. 101) as one reason why in the case before the court the annuity could not be either apportioned or its payment anticipated, that it would not be known whether the income would be sufficient to pay the annuity until the end of the year.

In Chase v. Darby, 110 Mich. 314, it is said that the word "annuity," which must be given its technical meaning unless something is found in the contract that indicates a different meaning was intended, carries with it the idea of an annual payment and that unless the rule of the common law is changed by statute, annuities are not apportionable.

In Wiggin, Admr. v. Swett, 6 Metc. (47 Mass.) 194, l. c. 201, Chief Justice SHAW announces the general rule, both at law and in equity to be, "that where an annuity is payable on fixed days during life, and the annuitant dies before the day, the personal representative is not entitled to a proportionate part of the annuity," and that where no day is named for the commencement of the year and by the will the annuity given was payable quarterly, that the beginning of each year was the date of the death of the testator, and that the annuity, if payable annually, fell due on each recurring anniversary of that date and not before. In that case the annuity was payable in quarterly installments, one quarterly installment due the 25th of May, the next falling due the 25th of the succeeding August. The beneficiary, however, died on the 22d of that August. Chief Justice SHAW held that in that event it fell within the general rule previously stated and not within the exceptions to the rule and that there could be no payment

or apportionment of it to the executor of the beneficiary for the period elapsing between the 25th of May and the 22nd of August of the same year.

In Dexter v. Flood, 121 Mass. 178, Mr. Justice GRAY, then Chief Justice, has collated the authorities very fully, and treating of the general rule of the common law followed by chancery, that sums of money payable periodically at fixed times, are not apportionable during the intervening period, and calling attention to the difference in the application of this rule as to rents and legacies and annuities and agreements for interest or coupons on public securities on the one hand, and the rule applicable to interest upon promissory notes of individuals on the other, holds that in the former case the rule of apportionment does not lie while in the latter it does.

In Heizer v. Heizer, 71 Ind. 526, where a son, for a valuable consideration, agreed to pay his father during his life a certain sum annually on a certain day of each year, the father died 20 days prior to the day on which the sum was payable. On suit being brought by his administrator to recover the proportionate part of such sum due at the time of his death, the Supreme Court of Indiana held, on a review of the authorities, that the sum thus contracted to be paid was an annuity; that at common law there can be no apportionment of an annuity, that the common law rule had not been changed by statute in Indiana, and that the administratrix could not recover.

In our own state the case of Lynch v. Houston, reported 138 Mo. App. 167, 119 S. W. 994, the decision by the Kansas City Court of Appeals, the opinion written by Judge ELLISON, the case heretofore referred to, is the only one in our appellate courts to which our attention has been called or which we have found, discussing the question of an annuity. That learned judge holds that the general rule of common law, recognized also by the courts of equity, that an annuity is not ap-

portionable in respect to time, is in force in this state. He cites (1. c. 171) Nehls v. Sauer, 119 Iowa 1. c. 441, and quoting from that, to the effect that the practically universal holding of the courts is that an annuity will not be apportioned and that if the annuitant dies during the year, even though it be on the last day before the payment falls due, the right to demand the annuity dies with him and his executor can recover no part of it. Judge ELLISON notes as an exception, that where the annuity is to be paid to the widow in lieu of her life-dower estate, or to minor children for support, it may be apportioned so that she or they will receive a proportionate amount for the year in which either may die. "But the rule itself," says Judge ELLISON, "as stated in Nehls v. Sauer, supra, is approved and emphasized in what appears to be an unbroken line of cases." The only authority the learned judge cites for extending the exception to the widow is Blight v. Blight, 51 Pa. St. 420; Sheen v. Osborn, 17 Serg. & Rawle 171; Sweigart v. Feay, 8 Serg. & Rawle 299; and Lackawanna Iron Co.'s Case, 37 N. J. Eq. 26. As to this latter case, Judge ELLISON notes it as an exception engrafted on to the rule to meet the particular facts. That is our view of the Lackawanna case. The Pennsylvania cases cited by Judge ELLISON are among those relied on by counsel for respondents. We do not think they meet the point in issue here, nor do we think them, so far as they do touch on that issue, exactly in line with the great weight of authority. Nor does Judge ELLISON seem to consider them as controlling the case before him. We are not to be understood as dissenting from what the Kansas City Court of Appeals held in this case. The distinction we draw as between that and the one at bar rests on the differences found in the instrument construed there and that here under construction. The rule was not applied by the court in Lynch v. Houston, for the reason that a consideration of the whole will showed that it was in contemplation of the testator that by pro-

viding that the payments should cease at the death of the beneficiary, he intended that they should continue up to the death. "The effect of the law," says Judge ELLISON (l. c. 175), considering a motion for rehearing in the case, "as to an unapportionable annuity is not that payments shall cease at death, but, in reality, that they shall cease at the last annual payment next before death; that is, before a death occurring prior to the day for the next payment; and when words are used showing that not to be the intention they should be allowed their natural force and meaning." After holding that intention may be shown in a great many ways, he holds as the conclusion of the court, that the parties intended that if the death of the beneficiary occurred before the day when the annual payment would have been due, the amount of that payment should be apportioned and payment be made of the proportionate part thereof up to his death.

We are referred to the decision of the Kansas City. Court of Appeals in the case of In re Estate Catron, 82 Mo. App. 416. We dismiss that from consideration as we do not think that it has any application whatever to the case at bar. It did not concern the question of the apportionment of a legacy, and was a case in which the executor in charge of the estate, having the whole of the estate in his possession, was called on to account for interest, the interest being the legacy. We had occasion to consider, and as far as applicable, follow the decision of the Kansas City Court of Appeals in this Catron case in the case of Good Samaritan Hosital v. Mississippi Valley Trust Co., 137 Mo. App. 179, 117 S. W. 637. No such issues arise here.

These are the cases illustrating the law on this matter. Several of them are of very recent date, the Lynch case decided May 17, 1909. So that it can hardly be said that in modern times the rule has met with disfavor. It is suggested that we have a rule in our state, to the effect that all deeds, wills or other instru-

ments in writing whereby an estate or other benefit is conferred by one to another, must be construed so as to effectuate the intent and purpose of a grantor or testa-tor, and that this rule has, in effect, abrogated the com-mon law rule against apportionment of an annuity. We are unable to appreciate the force of this, or to agree that one rule abolishes the other. Both can and do pre-vail, and all courts have so held. If it is necessary to carry out and effectuate the intent of the grantor or tes-tator that the annuity is to be apportioned, no court has ever failed to recognize the right or apportionment. That the Kansas City Court of Appeals illustrated and en-forced in the Lynch case, supra, at the same time recog-nizing and not attempting to overthrow the common law rule.

A cardinal rule to be observed in the construction of wills is that the intention of the testator is to be sought out and when ascertained, that intention given effect. [Tisdale v. Prather, 210 Mo. 402, l. c. 407, 109 S. W. 41.] This is also a statutory requirement. [R. S. 1909, sec. 583.] When, however, technical words are used in a will, they are to be interpreted in their estab-lished legal sense, and so the testator is presumed to employ them, unless a contrary meaning is plainly in-tended by the context of the will. [Drake v. Crane, 127 Mo. 85, l. c. 103, 29 S. W. 990; Cross v. Hoch, 149 Mo. 325, l. c. 338, 50 S. W. 786.]

The word "annuity," carries with it, in itself, the idea of a sum payable annually. An annuity, says Black, Law Dictionary, is "a yearly sum stipulated to be paid to another in fee, or for life, or years," citing Coke-Littleton. Chancellor Kent, Lect. LII, par. V, *p. 471, states that the principle underlying the rule that an annuity, like a rent charge, cannot be apportioned is, that it is an entire contract. So that treating of rent charge, which differs only from an annuity, in that it is a charge upon lands, while the annuity is a personal charge alone—if the tenant for life gave a

lease for years, rendering a yearly rent and died in the course of the year, the rent could not be apportioned and the tenant would go free of rent for the first of the year. While a technical word, it has a commonly accepted, a popular meaning. Thus in section 11579, Revised Statutes 1909, in the chapter concerning taxation and revenue, in defining the word "credit," as used in that chapter, we find this: "The term 'credit,' whenever used in this chapter shall be held to mean and include . . . every annuity or sum of money receivable at stated periods," thus making the word annuity synonymous with the words "a sum of money receivable at stated periods." That is, if nothing to the contrary appears, and the word "annuity," alone is used, it is to be construed as meaning a sum payable annually at the end of each year after it attached, for life, or as otherwise limited.

Turning from the law to the facts and contrasting the facts in the Lynch case with those in the case at bar, no such intention as found to exist in the Lynch case, to make the charge on the trust anything other than an annuity, can be found in or gathered from a consideration of the fourth clause of this will now under consideration. It is clearly and unmistakably an annuity. It has all the attributes of an annuity. By the force of which term, and by law, the first payment thereof became due on the first anniversary of the death of the testator. Not before then. It is idle to claim in the case at bar, that this provision creating this trust was necessary to the support of the widow, or that it was so intended. Mr. Woerner himself testified that there was no reason why the trust fund should not have been turned over at the time it was, because, he said, the estate was entirely solvent; that the outstanding debts were very insignificant and whatever debts existed could be paid out of the residue of the estate. While the learned trial judge, incorrectly, as we hold, ruled out the inventory of the estate, its omission happens to

work no particular harm, as we have before us, in the order of distribution, which was made on the petition of Mrs. Wiegand, ample evidence that there was no necessity whatever for the anticipation of the payment of this annuity before the arrival of its anniversary, to provide support for the widow.  Even if we close our eyes to knowledge we may have of current events, accepting the statement that the securities there referred to are worth only par, the testimony shows they drew from three to seven per cent, so that the income from them was certainly ample to support the widow, particularly in view of the fact that she was given the homestead with all its appurtenances, and that she had a right, under the law, even outside of this annuity, to have claimed the $400 as the absolute amount allowed her as the widow, as well as to an allowance for the support of her family for one year.   [Whiteman v. Swem, 71 Ind. 530.]   We can gather no meaning from the fourth clause of this will, other than that it was intended to be an annuity.   Such being so, and no time for the annual payments being fixed, then, as said by Chief Justice SHAW, in Wiggin, Admr. v. Swett, supra, the time for payment is the anniversary of the death of the party creating the trust, in this case, the testator, George Wiegand, Sr.   This clause directs the trustees to pay *annually* to his wife Rosalie for and during her lifetime the sum of $5000.   If the net profits, interest and income be insufficient to pay that sum the testator directs his trustees to take from the capital of that fund enough to make up the sum of $5000, so that in any event his' wife, so long as she shall live, shall "receive an *annuity* of that amount independently of any other provisions made for her in this will."   There is no mistaking this language.   When the testator gave the direction that his wife is to receive *an annuity,* the presumption is that he knew what that term "annuity" meant, which is to say, a sum payable annually, unless by the terms of the will itself the annuity was payable

in installments, of which there is no intimation of any such intention in this will. How would it be possible for the trustees to determine, until the expiration of the year, how much they should take from the capital fund to make up the $5000?  If they took any part of the $5000 out of the capital in advance, or quarterly even, anticipating the income before the expiration of the year, the fund itself would be diminished, the capital on which interest was to be earned for the year, and hence the interest or the income itself on the remainder of that capital would be diminished just so much. If they could anticipate the payment of any part of this annuity, they could anticipate all of it, justifying themselves on the assumption that they would pay it back, if the interest earned on the fund amounted to $5000, and that if the interest did not amount to $5000, it would be perfectly right to have taken it out of the principal. This would have amounted practically to waste of the fund itself, for every dollar taken out of the capital diminished the capital on which interest was to be earned. It was distinctly provided in this clause of the will, that if the net profits, interest and income exceed the amount of $5000 *"each year herein directed to be paid her,"* then the excess shall be added to and form part of the capital fund. Clearly this is the expressed intention that the $5000 is to be paid, not in installments, not anticipated, but each year. This clause further provides that upon the death of his wife, the *trust* shall cease "and the capital fund *in its then condition* shall be paid to and vest in my three children in equal shares." What does this term, "in its then condition," mean but the principal and the then accrued interest, provided the principal has not, at a preceding anniversary of payment, been diminished by having been drawn on to make up the annuity? It covers the fund, principal and accrued interest as then existent. It is expressly provided that interest

155 App.—17

earned over the *annuity* shall go into the principal. That interest and the principal constitute the fund to be distributed at its then condition on the day of distribution. There is nothing whatever in this clause, or, for that matter, in any other clause of the will, to indicate the slightest intention present in the mind of the testator, to make this other than an annuity in the sense in which the term annuity is used at law. It is no argument against this to say that the common mind is not acquainted with the fact that an annuity cannot be anticipated, but can only be payable on each anniversary of its payment, unless another period of payment is designated. This is the law and every one is presumed to know the law. Holding up the instrument by its four corners, construing it by every rule applicable, it appears to us futile for a court to say, in the face of its provisions, that this fourth clause is to be read other than in its literal language, as that language is interpreted by law, and that it creates an annuity, payable at the anniversary of the death of the testator, and not apportionable. It is not for a court to attempt to make a will for a man which he did not intend, in contemplation of law, to himself make.

There is this also to be said: Mrs. Wiegand, during her life, does not appear to have drawn on the trust fund; she turned it over in full to the trustees. There are two inferences that may be drawn from this: either she had it invested and drew the interest, or she did not need the income. It is not claimed that the income is needed to pay off any debts contracted by Mrs. Wiegand. What is demanded is, that it shall go into her general estate for the benefit of her residuary legatee. Surely the testator in establishing the trust fund, had no such intention in mind. He had provided for that legatee by making her an equal participator with her two brothers, in the whole fund, less such part thereof as might, under this fourth clause, have been paid over to her mother. We therefore hold, construing this

fourth clause, that there could be no apportionment whatever of this annuity, but that the beneficiary in the trust, the widow, dying before the anniversary, her executor is not entitled to recover even for the time that the trust fund was in the hands of these trustees.

*Second.* This brings us to a consideration of the question of credits and allowances. We are compelled to say that we think that the allowance of $1500 to these trustees, considering the time they held the trust fund until demand was made on them to turn it over, that is to say, from the 8th of July to the 3d or 5th of August, 1908; considering the shape in which that fund came into their hands, that is to say, interest paying bonds and a certificate of deposit, in an absolutely safe bank; considering the fact that the trustees were not required to give and gave no bond and were therefore saved the trouble, cost and expenses giving a bond might have entailed, and considering the acts of these trustees which made this suit necessary, we hold that they are not entitled to the amount allowed, $1500, certainly not to the amount claimed which was $3000. On consideration of all the facts in the case, we hold that a proper allowance to the trustees for their services down to final settlement and discharge, will be one-half of one per cent on the fund, that is to say $500.

We also think and hold that the trustees are entitled to a reasonable counsel fee. They were brought into court and made defendants, as trustees, and were necessary parties. While it was no part of their business to defend for the executor of Mrs. Wiegand, they were bound to make their appearance in court. We think that as covering services of counsel heretofore rendered and hereafter to be rendered in the circuit court, in connection with carrying out the order we will make herein, as well as for their services in this court, $250 is a reasonable allowance. When it is borne in mind that the amount actually in controversy here is only $2138.85, we think $250 a very liberal allowance for counsel.

The allowance of a credit of $10 for the services of C. F. A. Mueller, in connection with looking after property offered as security, and of $105.56 for interest accrued and $25 for premium on certain bonds, is also proper and should be allowed.

Credit for taxes for the years the trustees are liable for taxes on the funds while in their hands should be allowed on presentation of proper vouchers showing payment by them. These are all the allowances which should be made against the fund. Deducting these, whatever remains of the trust fund with its interest and earnings while in the hands of the trustees, should be ordered distributed to the parties plaintiff and to Mrs. Rubelmann, in equal amounts, one-third each.

*Third.* This disposes of all matters except as to costs and those are largely determinable on consideration of the attitude of Mr. Woerner in the case and as one of the trustees. Referring to the connection of Mr. Woerner with the case, it appears that he was the attorney for George Wiegand, deceased, and had written his will, and also represented Mrs. Rosalie Wiegand in the contest over that will and in the settlement which was effected between Mrs. Wiegand and the plaintiffs herein, the result of which was the dismissal of the contest and the confirmation of the will. He acted as attorney for Mrs. Wiegand in all her matters. He was also appointed executor of the will of Mrs. Rosalie Wiegand, who was his cousin. There was nothing whatever in these professional or blood relations of Mrs. Woerner to debar him from being trustee; to the contrary, it was entirely fit that he should be appointed as such. Nor had anything occurred that rendered his position as trustee under George Wiegand's will and as executor of Mrs. Wiegand's will antagonistic, until between the 3d and 7th of August, 1908. Being approached by one of the attorneys for plaintiffs, with a request for a distribution of the fund held in trust, Mrs. Rosalie

Wiegand being dead, the question was sprung as to the apportionment of the annuity, not exactly in that shape possibly, but over that. Mr. Woerner, as executor, claimed the right of apportionment. The attorney for plaintiffs suggested a partial distribution of the fund then, leaving in the fund a sufficient sum to cover items which might be in dispute. Mr. Woerner rejected the proposition, replying that he would not consent to a partial distribution but wanted the whole matter disposed of together and by one act. It appears that Mr. Woerner was sustained in this position by his associate trustee, the Trust Company. This could only mean that Mr. Woerner used his position as trustee to enforce his demand as executor. This he had no right to do, no matter how honest may have been his motives. The trustees, as such, could have no possible interest in that fund beyond that of a mere stakeholder. It was their duty, as trustees, when such a situation arose, to stand aside, and have the adverse claimants determine it between themselves, by agreement or in court. Failing action by these, the trustees could have brought the fund into court and required the parties to interplead. It is no answer to this to say that by precipitate action of plaintiffs, the trustees were cut off from this. What we are here seeking to enforce is the duty of the trustees to stand aloof. The controversy over that question of apportionment was clearly one between the estate of Rosalie Wiegand on the one side and these plaintiffs and Mrs. Rubelmann on the other, they being the parties interested in the trust fund as opposed to this right of apportionment. Mrs. Rubelmann, in point of fact, however, was interested as against these plaintiffs, in the apportionment being made as claimed by the executor of Mrs. Wiegand's will, Mr. Woerner. If the apportionment was made and the amount claimed was taken out of the trust fund, Mrs. Rubelmann would, as one interested in the trust fund, be required to contribute one-third of it, but the apportionment being allowed, and the

fund turned over to Mr. Woerner as executor, she not only recovered back as residuary legatee under her mother's will, this third, but would receive the two-thirds which her brothers would have lost from the trust fund. In point of fact the interests of Mrs. Rubel-mann and that of Mr. Woerner were identical. From that time on and when that situation arose Mr. Woerner should have surrendered his office of executor or of trustee. He could not, consistent with the rigid rules applicable to the duties of a trustee, which required him to be an entirely disinterested party, hold on to both positions. The result of his action as trustee and executor combined, was to tie up the whole fund and prevent distribution thereof until protracted litigation, which Mr. Woerner ought to have known would be the inevitable result of the action on his part, could be terminated. It appears that after this demand of August 3d, the matter of distribution was left in abeyance until the 5th of September, when the officer of the Trust Company, on being called on by counsel for plaintiff with reference to this question of apportionment of the annuity, told counsel for plaintiffs that any action taken by the trustees would have to be taken by both of them; that one could not act without the other and that the Trust Company would have to act with Mr. Woerner, and he referred him to Mr. Woerner. Hence it very clearly appears that the position of Mr. Woerner as trustee, standing by his claims as executor, was the direct cause of the refusal of this co-trustee and resulted in tying up the whole fund. That this was a position which no trustee had a right to occupy, is too clear for argument.

According to the testimony of Mr. Orr, the trust officer of the Trust Company, in a conversation he had had with one of the counsel for plaintiffs, along about the 1st of August, 1908, Mr. Orr suggested to that counsel that if no agreement could be reached on the construction of the will over this matter of apportionment, that there could be a partial distribution and that

the trustees could come into court and ask for a construction, it appearing that the point in the mind of this trust officer at the times and which he suggested to one of the plaintiffs, was not whether the annuity was payable at all but whether it dated from the date of the testator's death or from the date of the trustees receiving the fund. At all events it is very clear from the testimony of Mr. Orr, and the statement of Mr. Woerner to one of the counsel for plaintiffs, that Mr. Woerner insisted on keeping the whole fund intact until this question in which he, as executor of the estate of Mr. Wiegand, was interested was settled. This witness, Mr. Orr, further testified that in the discussion between himself and Mr. Woerner over the matter of the annuity, they both agreed that it should date from the date of Mr. Wiegand's death, rather than the date of the receipt of the capital fund by the trustees. This course was so obviously in the interest of the estate which Mr. Woerner represented as executor, that it is very clear that Mr. Woerner should not have participated as trustee in any decision of this question by his co-trustee. It further appears from the testimony of Mr. Orr, that when he, representing the Trust Company, and Mr. Woerner, as trustees, were considering the permanent investment of the capital fund in real estate, it appearing that such investment could be had for the whole fund at 5 per cent on security which the committee of the Trust Company had approved, that Mr. Woerner raised the question that within five or seven months the trustees would have to pay $5000 of that fund at or near that time. Where upon they decided to put the $10,000 in bonds which would be readily convertible so as to be able to make this payment as and when required without sacrificing the securities. The trustees took no outside legal advice, acting on their own view of the law. The action of Mr. Woerner as co-trustee was so evidently governed by his interest as executor, that it was highly improper for him to have acted in the dual capacity.

. As we have said, the association of Mr. Woerner with the parties did not, in itself, disqualify him as trustee, but he could not be both trustee and executor when the duties of the two conflicted as here. It is not a question of right action—the action in each character may have been entirely proper. The real core of the matter lies in the rule that no one individual, no matter how pure his motives or how high his character or exalted his ability, can be allowed to hold two positions, the respective duties of which are, or may become, antagonistic.

We are asked to remove Mr. Woerner as trustee. To remove one as trustee there must be a clear necessity for such act, a clear necessity for it, in order to save the trust property. "Mere error or even breach of trust, may not be sufficient; there must be such misconduct as to show want of capacity or of fidelity putting the trust in jeopardy." [1 Perry on Trusts (6 Ed.), sec. 276, foot page 478.] We find no necessity for such action to save this trust fund, in the first place; and in the second place, we do not find any such conduct on his part as to show either want of capacity or of fidelity, putting the trust fund in jeopardy. Our criticism of Mr. Woerner's action is on the sole ground that he occupied an incompatible position here, when called on to act as trustee and as executor. We decline, by silence to admit that one can properly do that.

We notice this now as it concerns the question of compensation and of costs. This litigation arose over a desire to add to the estate of Mrs. Rosalie Wiegand. Mr. Woerner, as executor, insisted on the apportionment before distribution. His co-trustee agreed to this. That insistence brought on this litigation. It was solely in the interests of the estate, of which Mr. Woerner was executor. The estate and the residuary legatee therein are the real parties to be benefited by the maintenance of the claim to the apportionment. Accordingly we direct that all the costs of this cause in the circuit court, as

well as in this court and in the circuit court on it again reaching that court, be taxed against Wm. F. Woerner, as executor of the last will of Mrs. Rosalie Wiegand, deceased.

We will add that we are asked to disallow the claim of the Trust Company and of Mr. Woerner, as trustees, for any allowance for their services as trustees or for counsel fee in this case. The rule is that a trustee who breaks the trust should be denied compensation for his services. [Newton v. Rebenack, 90 Mo. App. 650, 1. c. 676.] We find no such breach here, but it is beyond question that where one of two or more trustees acts in harmony with his co-trustee in connection with an adverse claim of the latter, neither of them is entitled to compensation. Without denying this rule, we do not think it proper to enforce it in this case, as the trustees acted in apparent good faith. We have placed the allowance to be made to them by the circuit court at $500, which, under the facts in this case, is all we think they should be allowed.

The judgment and decree of the circuit court of the city of St. Louis is reversed and set aside, and the cause remanded with directions to the court that the cause be proceeded with as herein directed. *Nortoni* and *Caulfield, JJ.,* concur.