Joseph P. Ktjszyhski, J.
Liability arising from the breach of trust by the fiduciary Bogerson had been imposed upon the defendants, J. Bussell Bogerson, Phelps Can Company, Burton iST. Lowe, Bita B. Lowe, Lyman C. Wynne and Adele B. Wynne, all of whom were declared constructive trustees of the 250 shares of Phelps Can Company stock for the benefit of the beneficiaries of the estates of Marion B. Gebbie and Geraldine G. Bellinger. (Parker v. Rogerson, 33 A D 2d 284; interlocutory judgments of this court in Gebbie v. Rogerson, 41 A D 2d 604, and Parker v. Rogerson, 41 A D 2d 600.)
The concern of this proceeding is the measure of damages and the facets of relief to which the plaintiffs are entitled.
The parties in the posture of plaintiffs did not seek a rescission under CPLB 3002. While defendant Bogerson sought rescission by way of an affirmative defense, this route previously had been rejected as a means by which he might disentangle himself from the liability imposed upon him. Bescission is no longer feasible since the constructive trustees have made vast changes of1 .substance in the character of the company.
While Bogerson may have had a long-standing plan to acquire the Phelps Can Company, the accusation of infidelity cannot be anchored in point of time until the first overt act in the aggrandizement scheme was put into operation. This has been ascertained as having occurred on December 28, 1964 when the first transfer of the Phelps Can Company stock was made for Bogerson’s benefit.
*707 While it may appear logical to use this 1964 date, practicalities make a later date, December 31, 1966, more acceptable as the determinative date in the computation of damages.
In the context of sequential events, December 31, 1966 is critical in the computation of damages. The defalcating plan begun in December, 1964 continued in 1965. Early in 1966, the manufacturing operation was terminated and the physical plant of the Phelps Company was dismantled. It is of central significance that in 1966 when the assets were liquidated and the inventory was sold, the net worth of the company was translated from mere bookkeeping entries into actual dollars. The Phelps Can Company then ceased to exist except for its name, and became at the option of the defendants an investment firm, a personal holding company dominated and controlled by Bogerson and his family. This date is more advantageous to the defendants also because the assets were sold for less than carried on the corporate books.
The value of Phelps shares cannot be calculated as one would evaluate the shares of an actively traded stock. Phelps was a closed corporation with only three basic parties owning the outstanding stock.
The estates are entitled to an allocation to them of an award representing the underlying value of their proportionate interest in the Phelps Can Company following its liquidation. In order to restore the beneficiaries of the constructive trust to the position they would have enjoyed had there been no self-dealing, they are entitled to that portion of the Phelps’ net assets which the shares of the Bellinger and Debbie estates bore to the outstanding shares of the company stock on December 31, 1966. (Scott, Trusts [3d ed.], § 516; Joseph v. Herzig, 198 N. Y. 456; Central Manhattan Props. v. D. A. Schulte, Inc., 91 F. 2d 728; Diamond v. Oreamuno, 24 N Y 2d 494; Matter of Hubbell, 302 N. Y. 246; Ann. 47 ALR 2d 176; Matter of Bolton, 121 Misc. 51; Matter of Dupignac, 123 Misc. 21; People ex rel. Union Trust Co. v. Coleman, 126 N. Y. 433.)
Each estate as owner of 125 shares of the 416 % outstanding was the equitable owner of 29.928% of the aggregate corporate assets. J. Bussell Bogerson had a 34.88% interest and each of his daughters held a 3.1% interest in Phelps. ' To the assets on December 31, 1966 in the amount of $1,602,389.06, the purchase price of the Bellinger shares as treasury stock in the amount of $225,000 must be added, to obtain the adjusted corporate net value of $1,827,389.06. The Bellinger estate is entitled to $546,904.10, less a credit of $225,000 for moneys received, leav *708 ing due and owing the amount of $321,904.10. The computation of the amount due to the Debbie estate is the same except for the credit for moneys received, $224,922.62, which results in the amount of $321,981.48 as due and owing.
The wrong occurred more than seven years ago. Throughout this time the beneficiaries have been deprived of the use of the balance of the money due to them. Interest at the rate of 6% annually must be paid by the constructive trustees on the amounts owing from the date the funds .should have been restored to the estates; namely, December 31, 1966 to the present. (Adair v. Brimmer, 74 N. Y. 539; Govin v. de Miranda, 140 N. Y. 474; Miller v. Miller, 271 App. Div. 1020; Cook v. Lowry, 95 N. Y. 103; Harrison v. Egan, 270 N. Y. 387; Trimboli v. Scarpaci Funeral Home, 37 A D 2d 386; Matter of Rosenbaum, 115 N. Y. S. 2d 450; Matter of Jones, 143 App. Div. 692, affd. 207 N. Y. 731; Matter of Drake, 132 N. Y. S. 2d 259.)
Defendant Rogerson’s proposal with conditions to the foundation to rescind the stock transfers did not act to stop the running of interest as this remedy was not sought by any of the plaintiffs.
Rejected must be the attempts to surcharge the beneficiaries of the constructive trust with the operational costs of the holding company since its inception, which include salaries and dividends paid to defendants. Nor can the beneficiaries be charged with the downward market fluctuation of the investments made by the holding company, since they had nothing to do with the birth of or the operation of the holding company.
The wrongdoer must bear the risk of the uncertainty which his actions have created. He stands in the position of an insurer against losses. (Scott, Trusts [3d ed.], § 205.)
This court has put to rest the question of whether there should be a divestiture of the profits allocable to Rogerson and his family’s held 167 % shares in the Phelps Can Company. In the interlocutory judgment this relief was denied.
Another facet of relief sought is the disallowance of all or a portion of Rogerson’s attorney’s fees and commissions in the administration of both estates.
On March 25, 1966 attorney’s fees in the Debbie estate were allowed by the Surrogate of Chautauqua County in the amount of $220,000, commissions as surviving executor and trustee in the' amount of $199,944.25 and disbursements of $1,376.92 which were paid on April 1, 1966. . In the Bellinger estate, a $50,000 draw for attorney’s fees was made on December 29, 1965 together with $6,517.15 as commissions. It is noted the *709 Grebbie fees and commissions were paid pursuant to a decree but that the Bellinger fees and commissions were not. While there is authority for a total forfeiture of Mr. Rogerson’s right to retain these funds, as a deterrent against and a penalty for his infidelity to his trust (Matter of Hyde, 149 Misc. 291; 4B Warren’s Heaton, Surrogates’ Courts, § 421; Matter of Rutledge, 162 N. Y. 31 [commissions forfeited]; Matter of Clarke, 12 N Y 2d 183 [attorney fees] ; Fur & Wool Trading Co. v. Fox Inc., 245 N. Y. 215), this court sitting in equity does have jurisdiction over this issue and is vested with authority to fashion relief which will do equity to the parties and right the wrong perpetrated. (Cook v. Lowry, 95 N. Y. 103, supra; Matter of Taft, 145 Misc. 435; Matter of Kramer, 70 N. Y. S. 2d 239; Matter of Bausch, 280 App. Div. 482; Matter of People [Bond & Mtge. Guar. Co.], 303 N. Y. 423.) Return of compensation received may be ordered. (Matter of Israel, 176 Misc. 120; CPLR 3017, subd. [a]; Kaminsky v. Kahn, 23 A D 2d 231.)
There is no distinction between the powers of the Supreme Court and the Surrogate’s Court in dealing with the compensation of an attorney and/or a trustee. (Matter of Pensato, 200 Misc. 751; Stevens v. Melcher, 152 N. Y. 551; Matter of Bushe, 227 N. Y. 85; 7 A. L. R. 1590; see, also, Parker v. Rogerson, 33 A D 2d 284, supra; Gebbie v. Rogerson, 33 A D 2d 1093.)
Rogerson had forfeited his right to any fees and commissions from December 28,1964 when he had put into operation his plan to illicitly acquire the Phelps Can Company.
In evidence is the preliminary account in the Grebbie estate for the period April 3,1949 to October 14,1963. It appears that most of the services performed were in the area of collection and distribution of1 income, payment of specific legacies, taxes and normal administration expenses. During that time the net value of the principal of the estate remained fairly stationary, girowing from approximately $976,000 in 1949 to $1,060,000 in 1963. The supplemental account covers the period to March 25, 1966 and also shows routine -receipts, payment of income, payment of taxes, advances of Rogerson’s attorney’s fees and commissions.
Rogerson’s tenure as an attorney and trustee in the Grebbie estate covers a span from 1949 to 1966, a period of 17 years. He was declared to be unfaithful to his trust in the last three. Exercising its discretion, this court orders that Rogerson return $50,000 of the attorney’s fee and $50,000 of the commissions -received by him in the Grebbie estate, with interest thereon *710 at 6% since April 1, 1966, and a further sum of $35,000 of the attorney fee and $5,000 of the commissions in the Bellinger estate, with interest at 6% since December 29, 1965. Furthermore, he is barred firom any further fees or commissions from these estates in the future.
As the final phase of relief sought, plaintiffs ask that the costs of the protracted litigation not be a burden upon the infants and the charitable beneficiary of the estates. Counsel fees and allowances are asked to be assessed against the culpable parties in order that the cestui recovery remain inviolate and not undermined by litigation costs. •
The G-ebbie Foundation is the sole remainderman of the G-ebbie estate and a one-third residuary of the Bellinger estate. The main portion of1 the Bellinger estate was bequeathed to the Parker infants, grandchildren of Mrs. Bellinger, who have since become of full age.
The litig-ation arising from Rogerson’s infidelity is now in its sixth year. There were numerous pretrial motions, extensive examinations before trial, at defendants’ request a bifurcated trial on the issues of liability and account, numerous pretrial, posttrial and reply briefs and memoranda were submitted, three appeals to the Appellate Division took place, together with many conferences and incidental appearances. This court has lived with this case for some time after first coming in contact with it in Special Term when the injunction was granted preventing the dispersal of the assets of the holding company. The bulk of the personal appearances by plaintiffs ’ counsel was before this court. Also, plaintiffs’ counsel submitted detailed sworn statements, itemizing the services and expenses incurred. There is a well-developed record before this court (see Matter of Spatt, 32 N Y 2d 778).
An allowance for counsel fees and disbursements is a matter of the court’s discretion where self-dealings of a fiduciary necessitate the proceedings. (Matter of Hidden, 243 N. Y. 499; Matter of Garvin, 256 N. Y. 518; Matter of Bausch, 280 App. Div. 482, supra; Matter of Rosenbaum, 115 N. Y. S. 2d 450, supra; 90 C. J. S. Trusts, § 420; Matter of Flood, 133 Misc. 72; Matter of Dalsimer, 251 App. Div. 385, affd. 277 N. Y. 717.)
Counsel for the G-ebbie Foundation, William H. Morris, Esq., contends the foundation expended the sum of $111,000 for attorneys’ fees and $11,722.67 for expenses.
Counsel for William Parker, as guardian of the persons and coguardian of the infants’ property, Marvin L. Schwartz, Esq., requests $200,000 for attorney’s fees and expenses.
*711 Counsel for Marine Midland Chautauqua National Bank, coguardian of the infants’ property, Robert Hitchcock, Esq., contends the sum of $51,816 is a reasonable amount for attorney’s fees and $3,748.11 for disbursements.
Even though summary judgment had been entered in favor of the Manufacturers Hanover Trust Company as coexecutor and trustee under the last will of Geraldine G. Bellinger against its cofiduciary Rogerson, intertwined in its appearances is its defense in the actions brought against it. Therefore, its counsel Richard J. Concannon, Esq., does not seek attorney’s fees but a reimbursement of the expenses incurred.
This court had considered many factors in the setting of the amount of the allowances. Mr. Schwartz was the fountainhead which launched the litigation. Mr. Morris represents the plaintiff making the largest recovery. Standing of counsel in the profession and the distances traveled were considered.
In the exercise of its discretion, this court allows as indemnification from the defendants: for Mr. Morris, $50,000 as attorney’s fees and $10,000 as expenses; for Mr. Schwartz, $50,000 as attorney’s fees and $10,000 as expenses; for Mr. Hitchcock, $15,000 as attorney’s fees and $3,000 as expenses; Manufacturers Hanover Trust Company is entitled to disbursements of $10,000 and no allowance by way of attorneys’ fees.
This court is continuing its jurisdiction for further allowances if additional services are necessitated in this litigation.