John G. EBEST, et al.,
Plaintiffs-Appellants,
Cross-Respondents,

v.

Bill L. BRUCE, et al.,
Defendant-Respondents,
Cross-Appellants.

Nos. 51773, 51812.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 7, 1987.

Motion for Rehearing and/or Transfer
Denied Aug. 6, 1987.

Application to Transfer Denied
Sept. 15, 1987.

William J. Travis, St. Louis, for John G. Ebest.

Gerald Timothy Carmody, St. Louis, for Bill L. Bruce.

KAROHL, Judge.

The business of Harvester Limited Partnership [HLP] is the ownership and management of Harvester Plaza Shopping Center in St. Charles County, Missouri. This suit involves a dispute between plaintiffs who are Class "B" limited partners and defendants who are the general partners and also the Class "A" limited partners of HLP. Plaintiffs assert that defendants breached their fiduciary duty as general partners by personally buying at a substantial discount purchase money obligations of the partnership which served to deny the partnership the benefit of a right of first refusal and the value of the discount. Plaintiff limited partners do not contest the evidence which supports the conclusion that during the time of ownership the general partners have successfully managed the operation of the shopping center and converted annual losses to annual profits. In round figures the general partners purchased in their own names the HLP obligation of approximately $570,000 in exchange for approximately $300,000. For this reason only plaintiffs sued for an accounting, a dissolution of the partnership, the appointment of a receiver and damages. The circuit court in a court tried case found no breach of fiduciary duty and denied the related relief. Plaintiffs as individuals also sued in a separate count for tortious interference with their contract to personally purchase the partnership obligation at a discount. The trial court entered judgment for defendants on this claim. However, the court ordered defendant general partners to transfer individual ownership of promissory notes owed by HLP (the subject of this litigation) to the partnership in exchange for compensation equal to the sums paid by defendants to acquire the notes. Plaintiffs, as Class "B" limited partners, and individually on the tort claim, appeal the judgment for the general partners; defendant general partners cross-appeal the order to transfer the promissory notes to the partnership from their personality.

We affirm in part; reverse and remand in part for amendment of the judgment.

HLP was originally formed by plaintiffs John G. Ebest and Norbert P. Sandbothe in July, 1980. They were the general partners of HLP. Their wives and others were limited partners. In July, 1980, HLP pur-

chased Harvest Plaza Shopping Center from M & H Investment Company for a total purchase price of $2,100,000. At the time M & H was indebted to National Fidelity Life Insurance for $1,300,000 secured by a deed of trust on the shopping center. HLP paid M & H $230,000 cash and executed two promissory notes in favor of M & H in the amounts of $1,300,000 and $570,000, each of which was secured by a second deed of trust on the shopping center. The larger note was made to conform with the obligation of M & H to National Fidelity. The smaller note represented the remaining interest of M & H after the down payment. By the provisions in the promissory notes a default on either note would constitute a default of both notes. Altogether, HLP's monthly obligation to M & H was $15,365 of which $12,025 was paid to M & H and from M & H to National Fidelity to retire the $1,300,000 obligation on the recorded first deed of trust. There remained a surplus paid to M & H of $3,340 per month or approximately $40,000 annually on the $570,000 note. Both notes gave HLP a thirty day right of first refusal in the event M & H decided to transfer the negotiable purchase money notes. The $570,000 promissory note is the subject of this litigation. The arrangement between HLP and M & H is described as "wraparound" financing.

In 1981, defendants Bill L. Bruce and William T. Vanover were general partners in a Missouri Limited Partnership known as Century Gardens, Ltd. The purposes of this partnership were to acquire Center Gardens Apartments which consisted of seventy-six apartment units; to rehabilitate and rent the property; and to qualify under Section 8 for rent subsidies on all apartment units. The apartments were then self supporting and the existing financing permitted a pay-off in thirteen and one half years. The evidence indicates that the original partners of Harvester Limited Partnership, plaintiffs here, benefited by obtaining a 75% interest in Century Gardens, Ltd. because of available tax advantages to limited partners.

In July, 1981, on the initiative of plaintiffs Ebest and Sandbothe HLP was amended and restated. As a result defendants Bruce and Vanover became the general partners of HLP and the Class "A" limited partners. Plaintiffs Ebest and Sandbothe organized still another limited partnership known as Harvester Gardens Limited Partnership [HGLP]. Under the reorganized HLP defendants became general partners having a one percent proprietary interest and Class "A" limited partners having a fifty percent limited partnership interest. The remaining forty-nine percent of HLP became the property of HGLP. It was the intention of the parties to create a like-kind exchange. The original partners of HLP would transfer fifty-one percent of its interest in the shopping center to defendants, retain a forty-nine percent Class "B" limited partnership interest and receive a seventy-five percent limited partnership interest in Century Gardens, Ltd. Plaintiffs reserved a right under the restated limited partnership agreement of July 30, 1981, to re-purchase all of HLP should defendants decide to sell. A certified public accountant testified that the restated partnership agreement was special for the reason that plaintiffs as Class "B" limited partners agreed not to participate in any day to day operations of HLP nor were they to benefit or lose from its operations. Their only interest was a right to a "back-end split" defined by the agreement to be a right to receive forty-nine percent of the proceeds of a sale or refinancing of the shopping center, not less than a $250,000 minimum payment before any proceeds would go to defendants Bruce and Vanover. Upon sale or refinancing after the Class "B" limited partners received $250,000, the next $260,204 would then be allocated to the Class "A" limited partners. Thereafter, the excess, if any, would be allocated among the partners according to their percentage of ownership in the partnership—fifty-one percent for defendants and forty-nine percent for plaintiffs as HGLP.

The restated partnership agreement of HLP provided that the general partners would receive "[a]ll income, profits, losses and credits except those arising from a

Capital Transaction and Refinancing shall be allocated as follows: General partners— Bill L. Bruce, one percent; Wm. T. Vanover, one percent; and Class 'A' limited partners, ninety-eight percent." According to the evidence from both sides the interest of plaintiffs as Class "B" limited partners was solely that of recouping on sale or refinancing. The subject matter of the dispute between the parties, the $570,000 purchase money note, is, by its terms, due and payable in 1990. Plaintiff Ebest testified arrangements to pay off this note may trigger a pay-off as a refinancing within the meaning of the restated partnership agreement. This may or may not occur depending upon the wishes of the holder of the note when due.

During the time plaintiffs managed the shopping center they did so at a loss. After the limited partnership was reorganized defendants, as general partners, made sufficient changes in the shopping center and the tenants to increase the rental income and provide an operational gain. At the time suit was filed requesting an accounting, a receiver, and a dissolution of the partnership it was operating profitably under the direction of defendants as general partners.

The dispute between the parties may be traced to the efforts of plaintiffs to purchase the "wrap-around" financing from M & H. Plaintiffs Ebest and Sandbothe as individuals expended considerable efforts with a view to acquiring the "wrap-around" financing at a discount for themselves individually. They did so both before and after HLP was reorganized in July, 1981. By an agreement of all of the parties involved in the reorganization of HLP plaintiffs Ebest and Sandbothe continued to appear as the general partners of HLP. The reorganized partnership agreement was never publicly noticed. The motive for secrecy in this respect was to prevent a due-on-sale call by National Fidelity Life Insurance Company. The owners of M & H negotiated a discount sale of the "wrap-around" financing with Ebest and Sandbothe believing that the latter were general partners of HLP.

On November 23, 1981, Ebest and Sandbothe entered into a contingent contract with M & H to purchase the "wrap-around" financing in exchange for a cash payment of $225,000. This purchase was never consummated. On January 15, 1982, Ebest and Sandbothe entered into a second contingent agreement with M & H to purchase the financing for $273,000 in cash. This purchase was never completed. On February 24, 1982, Ebest and Sandbothe entered into a third contingent contract with M & H to purchase the financing for $273,000 in cash. This too failed when a requested extension was denied by M & H. There is evidence from plaintiff's testimony offered by plaintiffs that after HLP was reorganized and during the period of these negotiations with M & H, Ebest and Sandbothe, or both, were not actively aware of a right of first refusal provision contained in the "wrap-around" financing notes in favor of HLP. They had been successful in obtaining those provisions in 1980.

Plaintiffs did not inform either Bruce or Vanover of any of the aforementioned contingent contracts. In November, 1982, Ebest approached Bruce and informed him that he, Ebest, had an opportunity to purchase the financing notes from M & H for $300,000 in cash. Ebest inquired as to whether Bruce would be interested in purchasing the financing. At that time Bruce informed Ebest that an "all cash" purchase of the financing was unwise, but that he, Bruce, would be interested in a purchase for either a small amount in cash or for the same price to be paid in installments. On December 9, 1982, Ebest and Sandbothe entered into an agreement with M & H to purchase the financing for $302,334 to be paid in installments over a three year period. This contract provided for a closing on January 18, 1983. The closing date could be extended for forty-five days if Ebest and Sandbothe informed M & H in writing that the syndication of a new limited partnership [Clarkson/Clayton Limited Partnership] was in progress and would likely be completed. Ebest and Sandbothe never provided such notification to M & H and the proposed new partnership was never syndicated.

Ebest intended to finance the purchase of the financing by acquiring a loan for the initial installment of $75,000 from the Interstate Bank of St. Peters. The bank issued a loan commitment letter on February 14, 1983, which provided that the financing notes held by M & H must be pledged to Interstate Bank as collateral for a loan to Ebest and Sandbothe. There is no evidence to indicate what M & H would receive in exchange for receiving one fourth of the purchase price in cash and surrendering possession of the notes or otherwise how that impediment could be cured. M & H did not agree to pledge the notes to the bank. Consequently, Ebest and Sandbothe never obtained the financing necessary to purchase the "wrap-around" financing. Additionally, on February 25, 1983, Ebest and Sandbothe met with the owners of M & H and requested an extension of sixty days to close on the December 9, 1982 agreement. Ebest and Sandbothe contend they had a "gentlemen's agreement" in oral form for an extension. The owners of M & H did not support this testimony. It was at this time, February, 1983, that Ebest and Sandbothe decided to advise defendant general partners of HLP of the possible purchase of the financing, pursuant to the partnership's right of first refusal. On March 7, 1983, after the December agreement had expired, Ebest delivered a copy of the December 9, 1982 agreement to Bruce and Vanover's office. This was the first knowledge that Bruce or Vanover had of the existence of the installment purchase agreement. The principals of M & H were at that time still not aware that Ebest and Sandbothe were not general partners of HLP.

On March 9, 1983 Ebest wrote a letter to Bruce and Vanover in which he stated the previous agreement to purchase the financing by them personally had expired and that Ebest had only a "gentlemen's agreement" to extend the closing date under the contract. On March 16, 1983 Ebest informed the owners of M & H that he and Sandbothe were not the general partners of HLP. Subsequently, M & H contacted Vanover and informed him that they would meet with Bruce and Vanover.

On March 23, 1983, Ebest and Sandbothe requested in writing that M & H sell the financing to HLP under the terms of their previous agreement with a closing to be made on March 24, 1983. M & H did not attend the closing. On March 24, 1983, plaintiffs, defendants and two principals of M & H met together. M & H stated that the previous December 9, 1982 agreement was no longer valid and they did not intend to close on that agreement. Defendants Bruce and Vanover stated that they were interested in purchasing the financing on behalf of HLP, but no agreement was reached. On April 4, 1983, within thirty days to the date he was notified of the proposed sale from M & H to plaintiffs, Bruce accepted in writing the right of first refusal to purchase the notes on behalf of HLP. At the request of Ebest and Sandbothe, Bruce and Vanover scheduled a closing under the December 9, 1982 agreement with M & H for April 14, 1983 at the office of their attorney. Again M & H did not attend the closing. A further effort to close for HLP failed.

After the scheduled closings under the December 9, 1982 agreement had failed defendants Bruce and Vanover negotiated for HLP the purchase of the financing from M & H on terms which were somewhat less favorable than the terms of the previous agreement and scheduled a closing for July 7, 1983. Just prior to the closing defendants Bruce and Vanover were advised by lawyers and accountants that a purchase by HLP in the name of HLP may result in adverse tax consequences. According to defendants' evidence it was for this reason only they personally purchased the "wrap-around" financing from M & H on July 15, 1983.

On July 15, 1983, defendants Bruce and Vanover, as individuals, closed on the purchase of the "wrap-around" financing without informing or obtaining the consent of the Class "B" limited partners. They paid $295,486.24 for the financing consisting of: $125,000 cash; a note payable in eighteen months for $125,000; and, assumption of

an outstanding promissory note owed by M & H to Twillman for $45,486.29.

In response to an inquiry by letter from plaintiff Ebest, defendant Bruce informed the plaintiffs of the details of the individual purchase of the "wrap-around" financing. This suit followed. In Counts I and II plaintiffs as general partners and on behalf of Harvester *Gardens* Limited Partnership requested relief leading to a dissolution and damages. As individuals plaintiffs Ebest and Sandbothe claim that they had individual beneficial rights under the December 9, 1982 agreement with M & H and that the actions of defendants as individuals denied them the benefits of that contract. This represents plaintiffs individual claim for tortious interference of contract.

Trial court found in its findings of fact that when defendants Bruce and Vanover purchased the "wrap-around" financing as individuals they had authority to make the purchase on behalf of HLP; that defendants, as general partners of HLP, should have purchased the financing on behalf of the partnership. The trial court held that the defendants did not act improperly in the sense of breach of fiduciary duty when they purchased the notes in their individual names on advice of counsel. It determined, however, that they could not retain the beneficial interest in the financing and ordered that they transfer the notes to HLP in exchange for compensation equal to their cost. The trial court did not order that all income received on the financing notes by defendants Bruce and Vanover also be transferred.

APPEAL OF PLAINTIFFS EBEST AND SANDBOTHE AS GENERAL PARTNERS OF HARVESTER GARDENS LIMITED PARTNERSHIP WITH STANDING AS CLASS "B" PARTNERS OF HARVESTER LIMITED PARTNERSHIP.

Plaintiffs Ebest and Sandbothe have standing as Class "B" limited partners of HLP. They also occupy the position of general partners of a limited partnership which is, in turn, the Class "B" limited partner. By their petition they seek equitable relief. We review a court tried case under Rule 73.01 as interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The rights and duties of plaintiffs and defendants are defined in a limited partnership agreement, the Uniform Limited Partnership Law, Chapter 359 RSMo 1978, and by reference the Uniform Partnership Law, Chapter 358 RSMo 1978. Limited partners have the same rights as a general partner to have partnership books kept and at all times to inspect and copy them; to have, on demand and whenever circumstances render it just and reasonable, true and full information of all things affecting the partnership; to have dissolution according to the agreement of the parties or by decree of court; and, to receive a share of the profits and a return of contribution as agreed or by law. Section 359.100 RSMo 1978. A general partner in a limited partnership possesses all the rights and powers, but is subject to all the restrictions and liabilities of a partner in any partnership without limited partners. Section 359.090 RSMo 1978. However, a general partner has no authority to do any act which would make it impossible to carry on the ordinary business of the partnership, Section 359.-090(2), or possess partnership property for other than a partnership purpose, Section 359.090(4) RSMo 1978. "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property." Section 358.-210 RSMo 1978. "Except as provided in this chapter or in the partnership agreement, a general partner of a limited partnership has the rights and powers and is subject to the restrictions of a partner in a partnership without limited partners." Section 359.251.2 RSMo 1978.

■ Without exception defendants are statutorily accountable as trustees or fiduciaries to their limited partners. The partnership acts so provide. See also, *Filbrun v. Ivers*, 92 Mo. 388, 4 S.W. 674, 676 (1887);

*Schroer v. Schroer*, 248 S.W.2d 617, 619 (Mo.1952); *Schoeller v. Schoeller*, 497 S.W.2d 860, 868 (Mo.App.1973).

■ We are assisted in interpreting the provisions of the uniform partnership acts by provisions which require interpretation or construction so as to effect their general purpose to make uniform the law of those states which enact it. Section 358.040.4 and 359.280.1 RSMo 1978. We find and the parties do not dispute that defendants as general partners are charged by statute and case law with a high fiduciary duty. Where a general partner of a limited partnership acts with complete control he stands in the same position to the limited partners as a trustee stands to the beneficiary of a trust. *Crenshaw v. Swenson*, 611 S.W.2d 886, 890 (Tex.Civ.App.1980).

Plaintiffs in their capacity as limited partners and on behalf of Harvester Gardens Limited Partnership assert the trial court erred in finding that defendants did not breach their fiduciary duty as general partners when they purchased the financing package from M & H at a discount of approximately $270,000. Both the purchase and the discount are undisputed. There was testimony given by deposition of both defendant Bruce and defendant Vanover that at the time of the purchase of the financing package in July, 1983, HLP could have arranged to purchase in the partnership name. As general partners defendants intended to purchase in the partnership name. They notified M & H of HLP's intention to exercise its right of first refusal. When the parties entered into an agreement with M & H defendants intended to purchase on behalf of the partnership. They changed their minds only on the basis of last minute advice of tax counsel and for tax reasons only. There is no dispute that they did not inform the limited partners of the change. Nor is there any dispute that the right of first refusal and the purchase at discount were valuable "assets" of HLP.

■ The trial court found that defendants Bruce and Vanover did not breach their fiduciary duty because they sought the advice of counsel when preparing to purchase the financing package in the name of the partnership and followed advice so as to avoid severe tax consequences to them as general partners. A forgiveness of debt from the principal amount of the $570,000 note may have been taxable income to the partners which would have translated into taxable income to the general partners.

■ We find this is not a basis which the law recognizes as a justification for finding no breach of fiduciary duty. By their undisclosed acts defendants personally benefitted and HLP lost the benefit of the right of refusal and a discount. We also reject defendants' argument that the partnership did not sustain a loss. The general partners argue that the liability of HLP was unaffected by their purchase of the financing package. In their view the partnership owed the same amount of money after they purchased the financing package in their individual names as before. HLP merely owed the general partners as individuals and the holder of the notes in place of M & H. This, however, erroneously applies the law to the facts. Defendants both testified that HLP would have benefited from a "good deal" had it purchased the notes in the finance package under either the December 9, 1982, agreement negotiated by plaintiffs or under the agreement they made for themselves. Defendant Vanover admitted that it would have "made sense" for the partnership to acquire the notes on the same terms as he and Bruce acquired for themselves. On the basis of these admissions and the facts the acquisition of the financing package at a discount was a breach of defendants' fiduciary duty as general partners. The defendants realized a personal gain which belonged to the partnership.

■ However, the question remains whether the breach of fiduciary duty requires the court to order an accounting, appoint a receiver, and judicially declare a dissolution. We think not. Apparently the solution proposed by the trial court originates from an implied finding that defendants as general partners acquired the financing notes in their individual names, but

that they hold them as trustees for the partnership. This would account for the decision to deny plaintiffs the relief they request, but to order a transfer of the notes to the partnership in exchange for compensation by a return of the purchase expenses advanced by defendants. A general partner has no authority to possess partnership property for other than a partnership purpose, Section 359.090(4) RSMo 1978, and must account to the partnership for any benefit, and hold for it as trustee any profits derived by him without the consent of other partners from any transaction connected with conduct of the partnership, Section 358.210.1 RSMo 1978. On this basis an order that defendant general partners hold the notes as trustee for HLP is justified providing HLP assumes a debt to the general partners for their expenses.

◼ Although we find that defendants breached their fiduciary duty as described we find no requirement that the partnership be dissolved. The purpose of an accounting and a receiver are related to the ultimate remedy of dissolution which the court denied. We recall that the partnership agreement provides that the limited partners have no part in the operation of the partnership nor in its profits or losses. Their sole interest under the special limited partnership agreement was to receive no less than $250,000 at the time of refinancing or sale of the shopping center. If the financing notes are held by the general partners as trustees for HLP then at the time of refinancing or sale the equity value of the partnership will be enhanced by the reduction in debt measured by the value of the purchase at discount of the obligations of the partnership. Further, none of the issues presented by plaintiffs as limited partners questions the ability or integrity of defendants as general partners in operating the shopping center. It has been converted from a losing investment to a profitable investment by their efforts. Accordingly, none of the grounds set forth in Section 358.320 RSMo 1978 which justify a decree of dissolution have been alleged or shown by the evidence. Defendants, as general partners, have not violated any of the provisions of the partnership agree-

ment, and the act of acquiring the financing notes does not constitute conduct tending to affect prejudicially the operation of the business. The partnership continues as a profitable investment. The plaintiffs petition does not allege and the evidence does not require a finding that it "is not reasonably practicable to carry on the business in conformity with the partnership agreement." Section 359.461 RSMo 1978. The evidence and the finding of the court was otherwise. Accordingly, we find that the trial court did not err in refusing to require an accounting, to appoint a receiver, or to order dissolution of the partnership. In that respect we note that the requested "accounting" was not that of the operation of the partnership, but rather of the separate transaction in regard to the purchase of the financing package. The only accounting which is necessary is settlement of defendants' expenses in purchasing the HLP notes at discount. That can be done by very little additional evidence and must be done to settle the amount of the general partners' advances. We further note that because the operational decisions and procedures were not in question the need of a receiver was unnecessary.

◼ Our position is supported by the principles enunciated in 60 Am.Jur.2d, *Partnership*, Section 127 (1972) which states: "A partner will not be permitted to purchase a partnership note or a claim against the firm, and if he does he may be treated as holding it for the benefit of the partnership." In *Filbrun v. Ivers*, 4 S.W. 674, 676 (1887) the court found in a case where the defendant partner had paid $210 for a Note having a face value of $4,000 which had been guaranteed by the partnership that the defendant partner would not be entitled to enforce the Note at face value, but only have a credit for the amount actually paid by him for the Note. Accordingly, we find defendants Bruce and Vanover should hold both the $1,300,000 and $570,000 Notes as constructive trustees for the benefit of the partnership and upon sale or refinancing of the partnership shall only receive a credit for the direct and indirect expenses (if any) actually incurred

by them for the Notes. Direct and indirect expenses would include the actual amount they paid from their own funds for the Notes and taxes paid, or payable (if any) by the partners through the partnership for the forgiveness of debt. Defendants may not charge HLP for more than the repayment of the funds they individually expended in acquiring the financing from M & H with interest as determined by the trial court. They may not retain as their own the benefit of HLP payments on the notes which become payment of principal on their obligation to M & H on the $125,000 note or the assumed $45,486.29 note. It may be that HLP will owe defendants only a return of their cash advance of $125,000 with interest because the HLP payments to defendants have been used to pay the $125,000 note and the $45,486.29 note. In view of this holding, since defendants are constructive trustees of the notes it would be improper for them to take personal advantage of the right to call either note before a sale or refinancing of the shopping center is performed. We therefore remand this case to the trial court to consider such further evidence as needed and to enter such order in place of the order that the notes be transferred from defendants to Harvester. Rule 84.14.

Plaintiffs as limited partners also claim the court erred in not granting plaintiff's request for a reasonable attorney's fee and costs. They rely on Section 5.09(a) of the partnership agreement which provides that the general partners shall indemnify and save harmless the partnership and the limited partners from any claim loss, expense liability action or damage including without limitation reasonable costs and expenses of litigation and appeal arising out of any unauthorized acts, fraud, bad faith, gross negligence or failure of the general partners to comply with any material representation condition or agreement contained in the partnership agreement. The trial court found that "plaintiffs are not entitled to recover from defendants reasonable attorney's fees incurred in the prosecution of Count I of this lawsuit, because *inter alia,* there has been no unauthorized act, fraud, bad faith, gross negli-

gence, failure to comply with any material misrepresentation, condition or other agreement contained in the partnership agreement as is required by Section 5.09(a) of the partnership agreement." Defendants' evidence, which the trial court was entitled to accept, supports finding defendants acquired the financing notes on the advice of counsel and that their act of acquisition was lawful and necessary to avoid adverse tax consequences. We note that nothing in the partnership agreement nor in the law required the general partners to acquire the financing package even at a substantial discount at their own personal expense. Plaintiffs are not entitled to the position that the general partners were required to negotiate and purchase the financing notes at discount and personally pay all expenses where one of the expenses may have been personal tax liability.

The provisions for indemnity of partners from partners contained in Section 358.180 RSMo 1978 have been interpreted to not include attorney's fees. In *Ohlendorf v. Feinstein,* 697 S.W.2d 553, 555 (Mo. App.1985). This court said "[T]here are cases in Missouri which have applied Section 358.180 as statutory authority for granting attorney's fees to a partner from another partner for costs of liquidation between them regarding the partnership or its interest." In the present case we find that the attorney's fees of both plaintiffs and defendants may be attributable as a direct expense for acquiring the financing package from M & H and may be adjusted and reimbursed to the partners in determining the formula distribution at the time of refinancing or sale of the shopping center. On remand the court may review the denial of attorney's fees or modify its judgment in this manner. We hold that the award of attorney's fees was not required by the partnership agreement nor by statute and remains a matter within the discretion of the trial court.

### PLAINTIFFS INDIVIDUAL CLAIMS FOR TORTIOUS INTERFERENCE OF CONTRACT.

Plaintiffs individually claim that the trial court erred in entering judgment

in favor of defendants on their claim for tortious interference of their contract rights set forth in a contract which they entered into on December 9, 1982 with M & H. The full and sufficient answer to this contention is that under the evidence the trial court was entitled to find that the contract rights of plaintiffs, if any, expired by the terms of the contract. Plaintiffs were never in a position to enforce the contract they rely on now. When they were general partners of the partnership in 1980 they negotiated and obtained from M & H a right of first refusal HLP. The partnership exercised that right. By the holding of the trial court, as amended according to this opinion, defendant general partners have exercised that right on behalf of HLP. Further, there was evidence from which the court could find that plaintiffs' individual rights, if indeed there were any, expired by the terms of the contract and before defendants participated in, or were aware of, the contract on which plaintiffs rely. Each attempted closing under the December 9, 1982 contract was uneventful. If any closing under that contract had occurred then all of the disputes leading to this lawsuit never would have occurred. As a result plaintiffs had no valid business relationship or expectancy in the December 9, 1982 contract nor did they sustain any resulting damages from defendants conduct. *Community Title Co. v. Roosevelt Federal Savings and Loan Ass'n,* 670 S.W.2d 895, 904–905 (Mo.App. 1984).

## DEFENDANTS CROSS APPEAL ON ORDER TO TRANSFER FINANCING NOTES ACQUIRED INDIVIDUALLY HLP.

Defendants contend that the trial court erred in ordering transfer of the "wraparound" notes to HLP because plaintiffs have no standing to obtain relief on behalf of the partnership; or, there is not substantial evidence to support the judgment; or the order is against the weight of the evidence and there is no equitable basis for entry of said judgment because the court correctly found defendants did not breach any fiduciary duty to plaintiffs or to the partnership.

On the issue of standing defendants rely on Section 359.591 RSMo 1986. We find this provision inapplicable. It did not become effective until 1987, after this case was tried. Further, as previously noted under the provisions of the Uniform Partnership Act and the Uniform Limited Partnership Act plaintiffs had standing.

The evidence including admissions of defendants supported the trial court finding that defendants acquired the "wraparound" financing notes at a time when HLP had a right of first refusal and would have benefited. The evidence supported a finding that the acts of defendants were a technical breach of fiduciary duty and that they would profit individually at the expense of the partnership which they served as general partners if permitted to retain the benefit of the discount and the use of HLP note payments to pay off their purchase. The provisions of the Uniform Partnership Act and the Uniform Limited Partnership Act fully supported a finding by the trial court that defendants as general partners individually held for the partnership the financing notes which they acquired at discount and at a time when the discount belonged to the partnership.

We agree with defendants that an order transferring the notes to the partnership could create "phantom income" to the partnership which may then become an expense as a current taxable event to the partnership in the form of "phantom income". However, the partnership would be obligated to reimburse all expenses of acquisition including tax liability that may follow.

On remand the trial court should amend the judgment so as to order defendants as general partners to hold in their individual names for the partnership the financing notes acquired at discount subject to their right of a refund of all expenses of acquisition which will, in part, off-set the value of the discount. The expenses were necessary in order for the partnership to have the benefit of the discount. Defendants as general partners are equitably entitled to reimbursement from HLP of all costs of

**926**

acquisition. Because the general partners have personally paid the cost of acquisition they are entitled to the income realized only on their personal investment (which the trial court must determine) until refinancing or sale under the provisions of the partnership agreement.

Judgment is affirmed in part; reversed and remanded in part for amendment of judgment consistent with this opinion.

PUDLOWSKI, P.J., and CRANDALL, J., concur.