Virginia B. FEINBERG,
et al., Respondents,

v.

ADOLPH K. FEINBERG HOTEL
TRUST, et al., Appellants.

No. 66786.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 9, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 15, 1996.

Mark D. Hirschfeld, Clayton, for appellants.

Gary M. Siegel, Wittner, Poger, Rosenblum & Spewak, Clayton, for respondents.

AHRENS, Presiding Judge.

In this court-tried action concerning a breach of a trust agreement, respondents, Dan and John Feinberg, appeal the trial court's judgment that they violated their fiduciary duties as co-trustees of the Adolph K. Feinberg Hotel Trust (Trust) and the court's order surcharging them for expenditures from the Trust and removing them as trustees. They also appeal the trial court's judgment ordering the Trust to pay $25,000 directly to respondent Virginia Feinberg's attorneys for counsel fees accrued by Virginia during the course of this litigation and ordering trustees to reimburse the Trust for these attorney fees. We affirm.

On August 29, 1974, Adolph Feinberg (grantor) executed a trust agreement (agreement) in which he created the Trust. According to the agreement, Adolph named his two sons, Dan and John (trustees), as co-trustees and established the Trust's corpus with fourteen Units of Participation in Queensway Development Partners. The agreement named grantor the sole income beneficiary during his lifetime and thereafter named his wife, Virginia Feinberg, the sole income beneficiary during her lifetime. Dan and John were named as remaindermen.

In 1986, the hotel which constituted the primary asset of Queensway Development Partners was sold, thus converting the Trust's corpus into $650,000 cash. During the next eight years, trustees utilized much of the Trust assets to finance several investments thereby reducing the amount of cash contained in the corpus to $4,000 at the time of trial. Grantor died in January, 1990 at which time Virginia became the Trust's sole income beneficiary. Since then, trustees have disbursed income to Virginia totalling approximately $14,000.

After her husband's death, Virginia requested an accounting of the Trust corpus. Trustees failed to comply and, on November 7, 1991, Virginia initiated the instant action alleging a breach of the trust agreement. The trial court ruled in her favor and permanently enjoined trustees from "dealing with the assets of the Trust", removed Dan and John from their position as co-trustees, and appointed their sister, Judy Feinberg–Brilliant, as successor trustee. The trial court also ordered Dan and John to repay a combined total of $332,342.21 in Trust principal improvidently removed plus interest and to pay $25,000 in attorney fees. Trustees timely filed this appeal.

In their first point on appeal, trustees assert the trial court erroneously ruled testimony inadmissible. Trustees argue in their brief that testimony concerning discussions between grantor and trustees about grantor's knowledge and intent regarding the Trust was "most relevant in determining the appropriateness of the trustees' administration of the Trust." Therefore, such testimony should have been admitted. We disagree.

Trustees' argument goes to the weight of the evidence not the admissibility.

Because the grantor is presumed to know the legal effect of the language used in the trust instrument, extrinsic evidence, including the grantor's own statements, regarding grantor's intentions are normally not admissible. *First National Bank of Kansas City v. Hyde*, 363 S.W.2d 647, 652–53 (Mo. banc 1962). However, when an ambiguity exists, extrinsic evidence is admissible solely for the purpose of giving explicit meaning to the ambiguous language and thus clarifying the grantor's intentions. *Breckner v. Prestwood*, 600 S.W.2d 52, 55 (Mo.App.1980). Whether an ambiguity exists is a question of law. *Boatmen's Trust Co. v. Sugden*, 827 S.W.2d 249, 254 (Mo.App.1992). Therefore, we review the trial court's evidentiary ruling de novo. *Id.*

■ Trustees contend the agreement contains two ambiguities which warrant the admission of extrinsic evidence. The first alleged ambiguity is the definition of the term "beneficiary". Trustees contend the trust agreement makes it unclear whether this term includes them. If it does, they argue, then the secured and unsecured loans from the Trust to the trustees were authorized under the agreement[1].

We find this argument to be moot. The trial court did not find that trustees violated their fiduciary duties simply because they loaned money to themselves, but found that such loans, along with other Trust estate disbursements, were violative because they were made adversely to the interests of Adolph and Virginia as income beneficiaries. Because the court was not determining to whom these loans were made, but for whose benefit they were made, the court did not need to construe the allegedly ambiguous language regarding the status of loan recipients.

The second alleged ambiguity regards the interplay of trustees' powers and duties. Trustees insist that the fiduciary duty owed to the Trust's income beneficiary is ambiguous when read in conjunction with the agreement's provisions giving trustees' the power to make non-liquid type investments. Trustees argue in their reply brief that extrinsic evidence of Adolph's intentions are needed to explain how the trust agreement can require trustees "to maximize current income" while simultaneously authorizing trustees to "invest in real estate, limited partnerships and ventures".

Trustees misconstrue the fiduciary duties owed to current beneficiaries. The trust agreement does not mandate that investment be made for the sole benefit of the income beneficiaries. It merely requires, in Article V, Section 1, that trustees exercise their discretionary powers "primarily to benefit each current [income] beneficiary rather than the remaindermen...."[2] Therefore, it clearly permits *some* use of trustees' powers for the benefit of the remaindermen. These limited powers can be used to make non-liquid type investments without violating trustees' fiduciary duties.

In addition, we refuse to find, as trustees urge, that, as a matter of law, no investment in real estate, limited partnerships, or ventures can be made which would benefit the income beneficiary. Thus, no contradiction or ambiguity exists regarding the interplay of trustees' powers and duties. The trial court did not err in refusing to admit extrinsic evidence of grantor's intent. Point denied.

In their third point on appeal[3], trustees contend the trial court erred in surcharging

1. Article XIII, Section 1(t) expressly authorizes trustees "to lend the principal or income of trust estate to the beneficiary, without interest and without security...." Conversely, Article XIII, Section 1(y) expressly prohibits trustees from lending "the principal or income of the trust estate, directly or indirectly, to any person who is *not beneficially interested in such trust estate*, without adequate interest and security...."

2. We note that the trial court implicitly found trustees had a duty to act in "the best interest of the income beneficiary". Because trustees do not appeal this finding, we cannot decide if it is consistent with the language used in the trust agreement or whether any potential inconsistency necessitates remand for a new trial. Rule 84.13(a). Furthermore, no manifest injustice or miscarriage of justice has resulted which would permit discretionary plain error review under Rule 84.13(c).

3. To facilitate comprehension and analysis, we review trustees points out of order.

trustees and removing them as trustees. They argue that the court's finding that they violated their fiduciary duties was not supported by substantial evidence. We disagree.

The primary issue before the trial court was the propriety of trustees' execution of the powers, rights and duties delegated to them by the agreement. Deciding this issue requires a two-fold inquiry, one a question of law and one a question of fact. First, the trial court must determine the scope of the powers, rights and duties delegated to trustees. Second, it must determine whether trustees' actions exceeded this scope.

■ In reviewing a court-tried case, we are governed by the principles established in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We must affirm the trial court's order unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* We view the facts and the concomitant reasonable inferences in the light most favorable to the court's order. *In the Interest of J.M.*, 847 S.W.2d 911, 913 (Mo.App.1993).

■ When evaluating the reasonableness of a trustee's exercise of power, a court must apply any objective standards which were expressed in the trust instrument. *In the Matter of Heisserer*, 797 S.W.2d 864, 870 (Mo.App.1990). Here, trustees imply that the agreement failed to supply an objective standard to guide the court. Therefore, trustees argue, they are only liable if Virginia proves they willfully abused their discretion, acted arbitrarily, fraudulently, dishonestly, or with an improper motive. *See Heisserer*, 797 S.W.2d at 864.

■ In the above argument, Trustees again fixate on their broad investment powers under the agreement and ignore their fiduciary duties to the income beneficiary. The paramount rule of construction in determining the meaning of trust provisions is that the grantor's intent is controlling. *Marvin F. Hall Trust v. Hall*, 810 S.W.2d 710, 714–15 (Mo.App.1991). The intent of the grantor must be ascertained primarily from the trust instrument as a whole. *Hyde*, 363

S.W.2d at 652. As previously discussed, grantor expressed a desire that trustees exercise their conferred powers primarily for the benefit of the income beneficiary. Even though it deviated slightly from the language of the agreement when expressing trustees' fiduciary duties, the trial court properly recognized this desire as an objective standard which must be utilized when determining the reasonableness of the trustees' investments.

■ The evidence, when viewed in the light most favorable to the court's order, showed that John, with Dan's knowledge and consent, used $100,000 from the Trust to purchase a Harbor Bank CD. He then pledged the CD as collateral for a personal loan which he used to invest in a condominium project. In late 1992, he removed his own name from the loan and substituted the Trust's name as the borrower. The interest earned on the CD was used as partial payment for the personal loan. To offset this personal use of Trust income, he executed several promissory notes totalling approximately $6,000 naming the Trust as payee. Similarly, John offset the Trust's cash disbursement to buy the CD by executing a personal promissory note, on April 17, 1988, for $100,000 plus 11% annual interest in favor of the Trust. When the note became due in 1993, he executed a renewal note extending the repayment period for two more years. John also borrowed approximately $16,000 in stock certificates from the Trust corpus to help finance his condominium project. Again, he merely executed an unsecured note in exchange. As of the date of trial, John had made only one $5,200 payment on all of these notes. This payment was made approximately one month before the instant trial. Despite the fact that John was delinquent in making his prior payments, neither trustee has instituted a suit to recover these delinquent payments.

Between November 1987 and February, 1989, Dan, with the knowledge and consent of John, invested $269,500 in Trust assets in HBC Venture which is a three person joint venture managed by Dan. HBC was formed to finance the acquisition of property and the construction of three buildings. Only one building was actually built. HBC was a

speculative investment because the building was not preleased. At the time of trial, HBC's building was averaging an occupancy rate below the break even level. HBC has never had a positive cash flow nor has it ever generated income for the Trust or the current income beneficiary.

Finally, Dan and John authorized the Trust to pay each of them $50,000 in trustee fees when the Trust sold its interest in the Queensway Partnership for $650,000 even though this sale was made simultaneously to and in conjunction with the sale of their personal interest in the partnership.

We hold substantial credible evidence was introduced to support the trial court's finding that trustees violated the fiduciary duties imposed upon them by the trust agreement. The trial court did not err in surcharging trustees or in removing them as trustees. Point denied.

In their second point relied on, trustees appeal the trial court's award of $25,000 in attorney fees. This award was ordered in two steps, both of which are challenged by trustees. First, the trial court ordered the Trust to pay $25,000 in fees to Virginia's attorneys. Second, the trial court ordered trustees to reimburse the Trust for the payment of these fees. Trustees contend the trial court abused its discretion when making both of these orders. We disagree.

In an equity case, such as the instant one, the award of attorney fees is left to the broad discretion of the trial court. *In re Estate of Remmele*, 853 S.W.2d 476, 481 (Mo.App.1993); *Washington University v. Royal Crown Bottling*, 801 S.W.2d 458, 469 (Mo.App.1990).

Missouri courts adhere to the "American rule" which states that, ordinarily, litigants must bear the expense of their own attorney fees. *Nix v. Nix*, 862 S.W.2d 948, 952 (Mo.App.1993). One exception to the rule, however, permits litigants to be "reimburse[d] when ordered by a court of equity [in order] to balance benefits." *Id.* This exception incorporates, at least, two related doctrines. First, it incorporates the common fund doctrine which was implicitly adopted when the Missouri Supreme Court permitted a trial court to require non-litigants to contribute their proportionate part of counsel fees when a litigant successfully created, increased, or preserved a fund in which the non-litigants were entitled to share. *Jesser v. Mayfair Hotel, Inc.*, 360 S.W.2d 652 (Mo. banc 1962) (citing *Leggett v. Missouri State Life Insurance Co.*, 342 S.W.2d 833, 936 (Mo. banc 1960)). The court stated, "the equitable way to apportion the expenses of counsel fees is to allow them against the fund." *Id.* Second, it incorporates the *Murray* doctrine which this court utilized when it permitted recovery of attorney fees by a beneficiary of an estate who successfully brought litigation "beneficial to the estate as a whole rather than to just individuals interested therein." *In re Estate of Chrisman*, 723 S.W.2d 484, 487 (Mo.App.1986) (quoting *Estate of Murray*, 682 S.W.2d 857, 858–59 (Mo.App.1984)).

An award of attorney fees to Virginia is justified under either doctrine. She successfully protected the Trust from trustees' breach of their fiduciary duties. Such protection benefited not only Virginia, but also the remaindermen and the Trust itself. Furthermore, allowing recovery of attorney fees directly from the Trust is an especially appropriate manner of equitably sharing the cost of litigation here because it is impossible to ascertain the proportionate benefit of the instant lawsuit to Virginia and the remaindermen. Finally, trustees fail to cite any applicable exceptions to the common fund doctrine and we find no reason to apply any here. *See Matter of Estate of Holscher*, 724 S.W.2d 577, 581 (Mo.App.1986). Therefore, we hold the trial court did not abuse its discretion in the award of fees payable from the corpus.

Generally, attorney fees awarded under either of the above doctrines are paid to litigants rather than attorneys. *See Nelson v. Mercantile Trust Co.*, 335 S.W.2d 167, 175 (Mo. banc 1960); *Leggett*, 342 S.W.2d at 939. However, this appears to be a matter of form rather than substance. *Chrisman*, 723 S.W.2d at 486 n. 3. Both the *Chrisman* court and the *Jesser* court approved allowances of fees directly to the attorneys. *Chrisman*, 723 S.W.2d at 488; *Jesser*, 360

S.W.2d at 665. We hold the trial court did not abuse its discretion in ordering the Trust to pay attorney fees of $25,000 to Virginia's attorneys.

Having decided the issue of direct payment of attorney fees to attorneys, we must now determine whether a trial court can order a party who breached his fiduciary duties to directly or indirectly pay the litigation costs of the opposing party. Again, we must examine the "equitable balancing of benefits" exception to the American rule. The equitable balancing of benefits by awarding attorney fees "occurs only if very unusual circumstances can be shown, and upon demonstration that action is so different from other actions of like kind that it should be considered an unusual circumstance." *Bryson v. Bryson*, 624 S.W.2d 92, 99 (Mo.App.1981). In our research of trust cases in Missouri, we failed to uncover any cases in which a trustee was engaged in self-dealing. We therefore hold that the occurrence of such a circumstance may warrant assessing attorney fees against trustees.

We are also influenced by several Missouri cases which are tangentially related to the instant case. At least one Missouri court has recognized that a violation of fiduciary duties resulting in personal benefit to the fiduciary can justify an assessment of attorney fees. *See Ebest v. Bruce*, 734 S.W.2d 915 (Mo.App. 1987). The appellate court in *Ebest*, after analogizing the relationship between a general partner and a limited partner to the relationship between a trustee and a trust beneficiary, inferred that a trial court has the discretion to order the general partners to pay the limited partners' attorney fees when the general partners had violated their fiduciary duties and were thereby personally benefitted. *Id.*, at 922–24. In the instant case, the trial court found that trustees violated their fiduciary duties and were thereby "unjustly enriched" when they utilized the Trust corpus to invest, directly or indirectly, in the condominium project and HBC Venture.

We are also influenced by this court's ruling in *Wiegand v. Woerner*, 155 Mo.App. 227, 134 S.W. 596, 608–09 (1911). In that case, Woerner was delegated the dual roles of executor of the estate of Rosalie Wiegand and trustee of the testamentary trust created by her husband, George Wiegand. *Id.* After Rosalie's death, a conflict arose between the fiduciary duties Woerner owed to the estate and to the trust. *Id.* The court ruled that Woerner, in his role as executor, was liable for all costs accrued by the estate's residuary legatees in the resulting litigation. *Id.*, 134 S.W. at 608–09.

Because of the aforementioned cases, we adopt a rule which permits courts to assess attorney fees against trustees who engage in self-dealing. Furthermore, we expressly limit our new rule to the unusual circumstances of this case. Whether attorney fees can be assessed against fiduciaries under other circumstances is a question best answered in future cases. *See Jesser*, 360 S.W.2d at 663–664.

We note that New York courts have previously addressed the issue before us today. Like us, New York appellate courts have permitted trial courts to exercise their discretion by assessing fees, not against the trust, but against the trustee personally because that trustee has engaged in self-dealing. *Public Service Co. of Colorado v. Chase Manhattan Bank*, 577 F.Supp. 92, 110 (S.D.N.Y.1983) (citing *Matter of Bausch*, 280 A.D. 482, 115 N.Y.S.2d 278 (1952); *Matter of Rothko*, 84 Misc.2d 830, 379 N.Y.S.2d 923 (Sur.Ct.1975); *Parker v. Rogerson*, 76 Misc.2d 705, 350 N.Y.S.2d 950 (Sur.Ct.1973)).

The trial court here found that trustees breached their fiduciary duties and implicitly found trustees engaged in self-dealing from which they personally benefitted when they invested the Trust corpus, directly or indirectly, in Dan's condominium project and in HBC. The trial court did not abuse its discretion when it ordered trustees to reimburse the Trust for Virginia's attorney fees. Point denied.

Judgment affirmed.

PUDLOWSKI and CRAHAN, JJ., concur.